# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CLEVERLINK TRADING LIMITED, a<br>Cyprus limited liability company;<br><br>REAL WORLD MEDIA, LLC, a<br>California limited liability company;<br><br>BRIAN D. MUIR, individually, and as an officer<br>or director of Cleverlink Trading Limited;<br><br>JESSE GOLDBERG, individually, and<br>as an officer or director of Cleverlink<br>Trading Limited and Real World Media, LLC; and<br><br>CALEB WOLF WICKMAN, individually, and<br>as an officer or director of Cleverlink<br>Trading Limited and Real World Media, LLC,<br><br>Defendants. | Case No.<br><br>**05C 2889**<br><br>JUDGE AMY ST. EVE<br><br>F I L E D  MAGISTRATE JUDGE COLL<br>LAL<br>MAY 1 6 2005<br><br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint

alleges as follows:

1.  The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission

    Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and under Section 7(a) of the Controlling

    the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"),

15 U.S.C. § 7706(a), to obtain preliminary and permanent injunctive relief, rescission of contracts, restitution, redress, disgorgement and other equitable relief for Defendants' deceptive and unfair acts or practices for violations of CAN-SPAM, 15 U.S.C. § 7701 *et seq.* and the FTC's Adult Labeling Rule (the "Adult Labeling Rule" or the "Rule"), 16 C.F.R. Part 316.4.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 45(a), 53(b), 57b, 7706(a) and 28 U.S.C. §§ 1331, 1337(a) and 1345.

3.      Venue in the United States District Court for the Northern District of Illinois is proper under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391 (b) (c) and (d).

## PLAINTIFF

4.      Plaintiff FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The Commission enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits deceptive or unfair acts or practices in or affecting commerce. The FTC is also charged with enforcing CAN-SPAM as if statutory violations of CAN-SPAM "were an unfair or deceptive act or practice proscribed under Section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. 57a(a)(1)(B))." 15 U.S.C. § 7706(a).

5.      Sections 13(b) and 19 of the FTC Act authorize the FTC to initiate federal district court proceedings, in its own name by its designated attorneys, to enjoin violations of any provision of law enforced by the FTC, and to secure such equitable relief as may be appropriate in each case. 15 U.S.C. §§ 53(b), 57b.

## DEFENDANTS

6.     Defendant Cleverlink Trading Limited ("Cleverlink") is a limited liability company formed under the laws of Cyprus. Cleverlink has formulated, directed, controlled, or participated in the acts or practices set forth in this Complaint. Cleverlink has transacted business in the Northern District of Illinois and throughout the United States.

7.     Defendant Real World Media, LLC ("Real World") is a California limited liability company with its registered office at 640 Bercut Dr., Suite A, Sacramento, CA 95814. Real World has formulated, directed, controlled, or participated in the acts or practices set forth in this Complaint. Real World has transacted business in the Northern District of Illinois and throughout the United States.

8.     Defendant Brian D. Muir is a director and shareholder of Cleverlink. Muir has formulated, directed, controlled, or participated in the acts or practices set forth in this Complaint. Muir has transacted business in the Northern District of Illinois and throughout the United States.

9.     Defendant Jesse Goldberg is a director and shareholder of Cleverlink, and a manager of Real World. Goldberg has formulated, directed, controlled, or participated in the acts or practices set forth in this Complaint. Goldberg has transacted business in the Northern District of Illinois and throughout the United States.

10.    Defendant Caleb Wolf Wickman is a director of Cleverlink, and a manager of Real World. Wickman has formulated, directed, controlled, or participated in the acts or practices set forth in this Complaint. Wickman has transacted business in the Northern District of Illinois and throughout the United States.

3

11.     Defendants have operated as a common enterprise in the commission of the acts or

practices described herein.

## COMMERCE

12.     At all times material to this Complaint, Defendants have maintained a substantial course

of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

15 U.S.C. § 44.

## DEFINITIONS

13.     "**Electronic mail message**" (or "email") means a message sent to a unique electronic

mail address. 15 U.S.C. § 7702(6).

14.     "**Electronic mail address**" means a destination, commonly expressed as a string of

characters, consisting of a unique user name or mailbox (commonly referred to as the

"local part") and a reference to an Internet domain (commonly referred to as the "domain

part"), whether or not displayed, to which an electronic mail message can be sent or

delivered. 15 U.S.C. § 7702(5).

15.     "**Commercial electronic mail message**" means any electronic mail message the primary

purpose of which is the commercial advertisement or promotion of a commercial product

or service (including the content on an Internet website operated for commercial

purposes). 15 U.S.C. § 7702(2).

16.     "**Affirmative consent**" to receipt of a commercial email message means that:

(A) the recipient expressly consented to receive the message, either in response to a clear

and conspicuous request for such consent or at the recipient's own initiative, and

4

(B) if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purpose of initiating commercial electronic mail message. 15 U.S.C. § 7702(1).

17. **"Header information"** means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message. 15 U.S.C. § 7702(8).

18. **"Initiate,"** when used with respect to a commercial email message, means to originate or transmit such message or to procure the origination or transmission of such message. 15 U.S.C. § 7702(9).

19. **"Procure,"** when used with respect to the initiation of a commercial email message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf. 15 U.S.C. § 7702(12).

20. **"Protected Computer"** means a computer which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States. 15 U.S.C. 7702(13).

21. **"Sender"** means a person who initiates a commercial email message and whose product, service, or Internet Web site is advertised or promoted by the message. 15 U.S.C. § 7702(16).

5

22. **"Sexually oriented material"** means any material that depicts sexually-explicit conduct as that term is defined in 18 U.S.C. § 2256, unless the depiction constitutes a small and insignificant part of the whole, the remainder of which is not primarily devoted to sexual matters. 15 U.S.C. § 7704(d)(4). Sexually-explicit conduct is defined by 18 U.S.C. § 2256 to mean actual or simulated:

    A.    sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    B.    bestiality;

    C.    masturbation;

    D.    sadistic or masochistic abuse; or

    E.    lascivious exhibition of the genitals or pubic area of any person.

### DEFENDANTS' BUSINESS ACTIVITIES

23. Since at least April 2004, and continuing to the present, Defendants have initiated the transmission of commercial email messages to protected computers. The primary purpose of these commercial email messages has been the commercial advertisement or promotion of Internet Web sites operated for a commercial purpose by Defendants.

24. Defendants operate numerous Web sites consisting of sexually oriented material. These Web sites advertise a purported Internet dating service containing lonely housewives who want casual sexual relationships. Defendants' Web sites include wantmorebabes.com, hotobjectofdesire.biz, maxfulltime.info, wiveswhocheat69.biz, hookuptomorrow.com and w0wo.com. Consumers who visit Defendants' Web sites are invited to join

Defendants' paid-content Web sites, including cleverlinkmembers.com. Defendants collect payment for access to this sexually oriented material.

25. Defendants' Web sites are promoted by commercial email messages. The commercial email messages direct consumers to Defendants' paid-content Web sites by containing hyperlinks that, when clicked, take consumers to Defendants' Web sites.

26. Defendants are "initiators" with respect to an email message when they have either originated or transmitted a message themselves or have procured the origination or transmission of a message through payments or other consideration, or inducements.

27. Defendants are "senders" with respect to an email message when they have initiated a message and it is Defendants' Web sites that are being advertised or promoted by such message.

28. In numerous instances, Defendants have initiated commercial email messages containing materially false or misleading header information. In many instances, the email contains an originating email address that was not assigned by the email service provider or was used without the authorization of the subscriber who obtained the email address from the email service operator. In other instances, the email message fails to identify accurately the protected computer used to initiate the message because the email message was relayed or retransmitted through another protected computer for purposes of disguising its origin.

29. In numerous instances, in order to induce consumers to open and read their commercial emails, Defendants have initiated commercial email messages that contain subject headers that misrepresent the content or subject matter of the message.

7

30.    In numerous instances, Defendants' commercial email messages fail to include any notification to recipients of their ability to decline receiving future email messages from Defendants, and they fail to include a reply email address or other mechanism that recipients can use to decline receiving future email messages from Defendants. In other instances, Defendants' commercial email messages include only vague indications of recipients' rights to decline receiving future email messages from Defendants.

31.    In numerous instances, Defendants have initiated commercial email messages that failed to include a valid physical postal address of the sender.

32.    In numerous instances, Defendants have initiated commercial email messages that include sexually oriented material to recipients who have not given prior affirmative consent to receive such messages. In numerous instances, these email messages fail to include the mark "SEXUALLY-EXPLICIT: " in the subject line of the messages, fail to include the mark "SEXUALLY-EXPLICIT: " and all required notices in the initially-viewable content of the messages, or fail to exclude sexually oriented material from the initially-viewable content of the messages.

## VIOLATIONS OF THE CAN-SPAM ACT

33.    The Controlling The Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7701 *et seq.*, became effective on January 1, 2004, and has since remained in full force and effect.

34.    Section 5(a)(1) of CAN-SPAM, 15 U.S.C. § 7704(a)(1), states:

> It is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message . . .

that contains, or is accompanied by, header information that is
materially false or materially misleading.

35.     Section 5(a)(6) of CAN-SPAM, 15 U.S.C. § 7704(a)(6), states:

For purposes of [section 5(a)(1)], the term "materially", when used
with respect to false or misleading header information, includes the
alteration or concealment of header information in a manner that
would impair the ability of an Internet access service processing
the message on behalf of a recipient, a person alleging a violation
of this section, or a law enforcement agency to identify, locate, or
respond to a person who initiated the electronic mail message or to
investigate the alleged violation, or the ability of a recipient of the
message to respond to a person who initiated the electronic
message.

36.     Section 5(a)(2) of CAN-SPAM, 15 U.S.C. § 7704(a)(2), states:

It is unlawful for any person to initiate the transmission to a
protected computer of a commercial electronic mail message if
such person has actual knowledge, or knowledge fairly implied
on the basis of objective circumstances, that a subject heading
of the message would be likely to mislead a recipient, acting
reasonably under the circumstances, about a material fact regarding
the content or subject matter of the message (consistent with the
criteria used in enforcement of Section 5 of the Federal Trade
Commission Act (15 U.S.C. § 45)).

37.     Section 7(e) of CAN-SPAM, 15 U.S.C. § 7706(e), states that in any action to enforce

compliance through an injunction with Section 5(a)(2) and other specified sections of

CAN-SPAM, the FTC need not allege or prove the state of mind required by such

sections.

38.     Section 5(a)(3) of CAN-SPAM, § 7704(a)(3) states:

It is unlawful for any person to initiate the transmission to a
protected computer of a commercial electronic mail message that
does not contain a functioning return electronic mail address or
other Internet-based mechanism, clearly and conspicuously
displayed, that –

9

(i) a recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from that sender at the electronic mail address where the message was received; and

(ii) remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message.

39.     Section 5(a)(5)(A) of CAN-SPAM, § 7704(a)(5)(A) states:

It is unlawful for any person to initiate the transmission of any commercial electronic mail message to a protected computer unless the message provides:

(i)      clear and conspicuous identification that the message is an advertisement or solicitation;

(ii)     clear and conspicuous notice of the opportunity under [section 5(a)(3)] to decline to receive further commercial electronic mail messages from the sender; and

(iii)    a valid physical postal address of the sender.

40.     Section 7(a) of CAN-SPAM, 15 U.S.C. § 7706(a), states:

[T]his Act shall be enforced by the [FTC] as if the violation of this Act were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. 57(a)(1)(B)).

## COUNT I

41.     In numerous instances, Defendants have initiated the transmission, to protected computers, of commercial email messages that contained, or were accompanied by, header information that is materially false or materially misleading.

42.     Defendants' acts or practices, as described in paragraph 41 above, violate 15 U.S.C. § 7704(a)(1).

## COUNT II

43.     In numerous instances, Defendants have initiated the transmission, to protected

computers, of commercial email messages that contained subject headings that would be

likely to mislead a recipient, acting reasonably under the circumstances, about a material

fact regarding the contents or subject matter of the message.

44.     Defendants' acts or practices, as described in paragraph 43 above, violate 15 U.S.C. §

7704(a)(2).

## COUNT III

45.     In numerous instances, Defendants have initiated the transmission, to protected

computers, of commercial email messages that advertise or promote Defendants' Internet

Web sites, products or services, and do not include:

    a.      a clear and conspicuous notice of the recipient's opportunity to decline to receive

further commercial electronic mail messages from Defendants at the recipient's

electronic mail address; and/or

    b.      a functioning return electronic mail address or other Internet-based mechanism,

clearly and conspicuously displayed, that a recipient could use to submit a reply

electronic mail message or other form of Internet-based communication

requesting not to receive future commercial electronic mail messages from

Defendants at the electronic mail address where the message was received, and

that remains capable of receiving such messages or communications for no less

than 30 days after the transmission of the original message.

46.     Defendants' acts or practices, as described in paragraph 45 above, violate 15 U.S.C. §

        7704(a)(5)(A)(ii) and/or § 7704(a)(3).

## COUNT IV

47.     In numerous instances, Defendants have initiated the transmission, to protected

        computers, of commercial email messages that advertise or promote Defendants' Internet

        Web sites, products or services and do not include the senders' valid physical postal

        address.

48.     Defendants' acts or practices, as described in paragraph 47 above, violate 15 U.S.C.

        § 7704(a)(5)(iii).

## VIOLATIONS OF THE ADULT LABELING RULE AND CAN-SPAM IN THE TRANSMISSION OF EMAIL THAT CONTAINS SEXUALLY ORIENTED MATERIAL

49.     The Commission promulgated the Adult Labeling Rule pursuant to Sections 7704(d)(3)

        and 7711(a) of the CAN-SPAM Act, 15 U.S.C. §§ 7704(d)(3) and 7711(a). The Rule

        became effective on May 19, 2004, and sets forth marks and notices to be included in

        commercial email messages that contain sexually oriented material.

50.     The CAN-SPAM Act and the Adult Labeling Rule both prohibit any person from

        initiating the transmission, to a protected computer, of any commercial email message

        that includes sexually oriented material and fails to include the phrase "SEXUALLY-

        EXPLICIT:" as the first nineteen (19) characters at the beginning of the subject line. 15

        U.S.C. § 7704(d)(1)(A); 16 C.F.R. § 316.4(a)(1).

51.     The CAN-SPAM Act and the Adult Labeling Rule also require that any message that

        includes sexually oriented material place only the following information within the

content of the message that is initially viewable by the recipient, when the message is opened by the recipient and absent any further action by the recipient ("initially viewable content"):

A.  the phrase "SEXUALLY-EXPLICIT: " in a clear and conspicuous manner, 15 U.S.C. § 7704(d)(1)(B)(i); 16 C.F.R. § 316.4(a)(2)(i);

B.  clear and conspicuous notice that the message is an advertisement or solicitation, 15 U.S.C. § 7704(d)(1)(B)(ii); 16 C.F.R. § 316.4(a)(2)(ii);

C.  clear and conspicuous notice of the opportunity of a recipient to decline to receive further commercial email messages from the sender, 15 U.S.C. § 7704(d)(1)(B)(ii); 16 C.F.R. § 316.4(a)(2)(iii);

D.  a functioning return email address or other Internet-based mechanism, clearly and conspicuously displayed, that a recipient may use to submit, in a manner specified in the message, a reply email message or other form of Internet-based communication requesting not to receive future commercial email messages from that sender at the email address where the message was received; and that remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message, 15 U.S.C. § 7704(d)(1)(B)(ii); 16 C.F.R. § 316.4(a)(2)(iv);

E.  clear and conspicuous display of a valid physical postal address of the sender, 15 U.S.C. § 7704(d)(1)(B)(ii); 16 C.F.R. § 316.4(a)(2)(v); and

F.    any needed instructions on how to access, or activate a mechanism to access, the sexually orientated material, preceded by a clear and conspicuous statement that to avoid viewing the sexually oriented material, a recipient should delete the email message without following such instructions, 15 U.S.C. § 7704(d)(1)(B)(iii); 16 C.F.R. § 316.4(a)(2)(vi).

52.    The labeling and placement requirements of the CAN-SPAM Act and the Adult Labeling Rule do not apply if the recipient has given prior affirmative consent to receipt of the message. 15 U.S.C. § 7704(d)(2); 16 C.F.R. § 316.4(b).

53.    Pursuant to Section 7711(a) of the CAN-SPAM Act, which allows the Commission to issue regulations to "implement the provisions of [CAN-SPAM]," and Section 7706(a), which provides that "[CAN-SPAM] shall be enforced by the [FTC] as if the violation of this Act were an unfair or deceptive act or practice proscribed under Section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. 57a(a)(1)(B))," violations of the Adult Labeling Rule and Section 7704(d) of CAN-SPAM shall be enforced as if the violation were an unfair or deceptive act or practice proscribed under Section 18(a)(1)(B) of the FTC Act.

## COUNT V

54.    In numerous instances, Defendants have initiated the transmission, to protected computers, of commercial email messages that include sexually oriented material and that:

A.    fail to include the phrase "SEXUALLY-EXPLICIT: " as the first nineteen (19) characters at the beginning of the subject line;

14

B. fail to include, within the initially viewable content of the message, a second instance of the phrase "SEXUALLY-EXPLICIT: ";

C. fail to include, within the initially viewable content of the message, clear and conspicuous notice of the opportunity of a recipient to decline to receive further commercial email messages from Defendants, or a functioning Internet-based mechanism that remains capable of receiving such requests for thirty (30) days;

D. fail to include, within the initially viewable content of the message, clear and conspicuous display of a valid physical postal address of Defendants; or

E. include sexually oriented material within the subject line and/or the initially viewable content of the message.

55. In numerous instances, recipients of commercial electronic email messages initiated by Defendants that include sexually oriented material have not given prior affirmative consent to receipt of such messages. In many cases, the messages say that they are from a party identified as a nonexistent electronic mail address, nonsense strings of characters, or random strings of names. Few, if any, recipients ever gave consent to receipt of messages from such parties or were given clear and conspicuous notice that any consent they gave to a different party could be transferred to the party identified as the source of the messages.

56. Therefore, Defendants' acts or practices violate Section 5(d) of the CAN-SPAM Act, 15 U.S.C. § 7704(d), and the Adult Labeling Rule, 16 C.F.R. § 316.4.

15

## INDIVIDUAL AND BUSINESS INJURY

57.    Individuals and businesses throughout the United States and beyond have suffered, and continue to suffer, substantial monetary loss and other injury as a result of Defendants' unlawful acts or practices.   In addition, Defendants have been unjustly enriched as a result of their unlawful practices.  Absent injunctive and other equitable relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

58.    Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, empowers this Court to grant injunctive and other ancillary equitable relief to prevent and remedy Defendants' violations of the FTC Act, and in the exercise of its equitable jurisdiction, to award redress to remedy the injury to individuals and businesses, to order the disgorgement of monies resulting from Defendants' unlawful acts or practices, and to order other ancillary equitable relief.  A violation of CAN-SPAM and the Adult Labeling Rule may be remedied in the same manner as a violation of the FTC Act. 15 U.S.C. § 7706.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 7(a) of CAN-SPAM, 15 U.S.C. § 7706(a), and the Court's own equitable powers, requests that the Court:

16

1.      Enter an order enjoining Defendants preliminarily and permanently from violating

Section 5 of the FTC Act, the CAN-SPAM Act, and the Adult Labeling Rule, and

freezing Defendants' assets;

2.      Award such relief as the Court finds necessary to address injury resulting from

Defendants' violations of the FTC Act, the CAN-SPAM Act, and the Adult Labeling

Rule, including, but not limited to, rescission of contracts, restitution, redress,

disgorgement of ill-gotten gains, and the refund of monies paid; and

3.      Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Dated: May 16, 2005

                                        Respectfully submitted,

                                        William Blumenthal
                                        General Counsel


                                        Steven M. Wernikoff
                                        Jason K. Bowler
                                        Federal Trade Commission
                                        55 East Monroe, Suite 1860
                                        Chicago, IL 60603
                                        Telephone: (312) 960-5634
                                        Facsimile: (312) 960-5600