

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05C 2889 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| CLEVERLINK TRADING LIMITED, et. al. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STIPULATED PRELIMINARY INJUNCTION

Plaintiff Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Injunctive and Other Equitable Relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 7(a) of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM" or "the CAN-SPAM Act"), 15 U.S.C. § 7706(a) on May 16, 2005.

On May 16, 2005, the Court granted the FTC's *ex parte* motion for a Temporary Restraining Order, Other Equitable Relief, and Order To Show Cause Why a Preliminary Injunction Should Not Issue ("TRO") pursuant to Rule 65 of the Federal Rules of Civil Procedure.

On May 25, 2005, the Court held a hearing in this matter, at which the FTC and Defendants were represented by counsel. After hearing argument in this matter, on May 27, 2005, the Court modified the TRO entered on May 16, 2005. The Court subsequently approved stipulations of the parties extending the Modified TRO through June 29, 2005. As the parties

have agreed upon the terms of a Stipulated Preliminary Injunction, it is **ORDERED, ADJUDGED, AND DECREED** as follows:

## FINDINGS

1.    This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it has jurisdiction over the parties;

2.    Venue properly lies with this Court;

3.    The Commission and Defendants agree that this Order is binding in form and scope pursuant to F.R.C.P. 65;

4.    Weighing the equities and considering the Plaintiff's likelihood of success, this Order is in the public interest;

5.    The Court's entry of this Stipulated Preliminary Injunction does not represent a finding that Defendants have violated the law as alleged in the Commission's Complaint; and

6.    No security is required of any agency of the United States for the issuance of a Preliminary Injunction. *See* Fed. R. Civ. P. 65(c).

## DEFINITIONS

1.    **"Affirmative Consent"** with respect to a commercial email message, means that "the recipient expressly consented to receive the message, either in response to a clear and conspicuous request for such consent or at the recipient's own initiative;" and "if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purposes of initiating commercial electronic mail messages." 15 U.S.C. § 7702(1).

2

2.  **"Asset"** or **"Assets"** mean any legal or equitable interest in, right to, or claim to, any real and personal property, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, premises, contracts, mail or other deliveries, shares of stock, lists of consumer names, inventory, checks, notes, accounts, credits, receivables, funds, and all cash, wherever located.

3.  **"Clear and conspicuous"** or **"clearly and conspicuously"** with regard to the display of a notice means that the information shall be presented in writing, in a type size, color, and location sufficient for an ordinary consumer to read and comprehend it, and shall be disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer. If the information is contained in a multi-page print document, the disclosure shall appear on the first page or in close proximity to the submit button, check box or other manner in which the recipient provides consent.

4.  **"Commercial electronic mail message"** (or **"commercial email"**) "means any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose)." 15 U.S.C. § 7702(2) (A).

5.  **"Defendants"** means Cleverlink Trading Limited; Real World Media, LLC; Brian D. Muir; Jesse Goldberg; and Caleb Wolf Wickman, and each of them, by whatever names each may be known.

6.  **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence, photographs, audio and video

recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

7.     **"Electronic mail address"** "means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an electronic mail message can be sent or delivered." 15 U.S.C. § 7702(5).

8.     **"Header information"** "means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." 15 U.S.C. § 7702(8).

9.     **"Initiate,"** "when used with respect to a commercial email message, means to originate or transmit such message or to procure the origination or transmission of such message." 15 U.S.C. § 7702(9).

10.     **"Procure,"** when used with respect to the initiation of a commercial email message, means "intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf." 15 U.S.C. § 7702(12).

11.     **"Protected computer"** means a computer which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States. 15 U.S.C. § 7702(13); 18 U.S.C. § 1030(e)(2)(B).

4

12.     **"Sender"** means a person who initiates a commercial electronic mail message and whose product, service, or Internet Web site is advertised or promoted by the message.

15 U.S.C. § 7702(16).

13.     **"Sexually oriented material"** means any material that depicts sexually-explicit conduct as that term is defined in 18 U.S.C. § 2256, unless the depiction constitutes a small and insignificant part of the whole, the remainder of which is not primarily devoted to sexual matters. 15 U.S.C. § 7704(d)(4). Sexually-explicit conduct is defined by 18 U.S.C. § 2256 to mean actual or simulated:

        a.      sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex;

        b.      bestiality;

        c.      masturbation;

        d.      sadistic or masochistic abuse; or

        e.      lascivious exhibition of the genitals or pubic area of any person.

### I.

### PROHIBITIONS AGAINST MISREPRESENTATIONS

**IT IS THEREFORE ORDERED** that Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through a trust, corporation, subsidiary, division, or other device, or any of them, are preliminarily restrained and enjoined from:

      A.     Initiating the transmission of commercial email that:

1. Contains, or is accompanied by, materially false or materially misleading header information, including but not limited to:

    a. an originating electronic mail address, domain name, or Internet Protocol address when the access to such originating electronic mail address, domain name or Internet Protocol address was obtained by means of false or fraudulent pretenses or representations; or

    b. a "from" line (the line identifying or purporting to identify the person initiating the messages) that does not accurately identify any person who initiated the message; and/or

2. Contains a subject heading likely to mislead recipients, acting reasonably under the circumstances, about material facts regarding the contents or subject matter of the message; and/or

B. Making, or assisting others in making, expressly or by implication, any material false or misleading verbal or written statement or representation, in connection with marketing, advertising, promotion, offering for sale, or provision of any products or services.

## II.

## PROHIBITIONS AGAINST OPT-OUT AND POSTAL ADDRESS VIOLATIONS

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or

through a trust, corporation, subsidiary, division, or other device, or any of them, are preliminarily restrained and enjoined from initiating the transmission of a commercial email that:

A.     Does not include a clear and conspicuous notice of the recipient's opportunity to decline to receive further commercial electronic mail messages from the sender at the recipient's electronic mail address and describes the means by which the recipient can decline to receive future commercial email messages from the sender;

B.     Does not include a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that a recipient can use to submit a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from the sender at the electronic mail address where the message was received, and that remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message;

C.     Does not include the sender's valid physical postal address; and/or

D.     Is sent to a recipient's email address, more than 10 business days after the sender receives a request from that email recipient not to receive future commercial electronic mail messages from the sender at the recipient's electronic mail address.

7

## III.

### PROHIBITIONS AGAINST FAILING TO IDENTIFY AN EMAIL MESSAGE AS AN ADVERTISEMENT OR SOLICITATION

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through a trust, corporation, subsidiary, division, or other device, or any of them, are preliminarily restrained and enjoined from initiating the transmission of a commercial email that fails to provide clear and conspicuous identification that the message is an advertisement or solicitation.

**PROVIDED, HOWEVER,** that the requirements of this Section do not apply to commercial email messages transmitted only to recipients for whom Defendants have Affirmative Consent from such recipients.

## IV.

### PROHIBITION AGAINST VIOLATING THE ADULT LABELING RULE

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through a trust, corporation, subsidiary, division, or other device, or any of them, are preliminarily enjoined from initiating the transmission of a commercial email that includes sexually oriented material:

A.   That does not contain the phrase "SEXUALLY-EXPLICIT: " as the first nineteen (19) characters at the beginning of the subject line of the message;

8

B.      That includes sexually oriented materials within the subject line of the message;

C.      That includes sexually oriented materials within the content of the message that is initially viewable by the recipient, when the message is opened by the recipient and absent any further action by the recipient; and

D.      That does not contain only the following information within the content of the message that is initially viewable by the recipient, when the message is opened by the recipient and absent any further action by the recipient:

1.      the phrase "SEXUALLY-EXPLICIT: " in a clear and conspicuous manner;

2.      clear and conspicuous notice that the message is an advertisement or solicitation;

3.      clear and conspicuous notice of the opportunity of the recipient to decline to receive further commercial email messages from the defendants;

4.      a functioning return email address or other Internet-based mechanism, clearly and conspicuously displayed, that (I) a recipient may use to submit, in a manner specified in the message, a reply email message or other form of Internet-based communication requesting not to receive future commercial email messages from that sender at the email address where the message was received; and (ii) that remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message; and

5.      clear and conspicuous display of a valid physical postal address of a defendant who initiated the message.

9

**Provided, however**, that the requirements of this Section do not apply to commercial electronic mail messages transmitted only to persons who have given prior affirmative consent to receipt of the message.  The applicability of this Section to persons who have given prior affirmative consent does not obviate the requirement to include the information specified in Sections II and III of this Order.

## V.

## INJUNCTION AGAINST NEW DOMAIN REGISTRATIONS WITHOUT REPORTING

**IT IS FURTHER ORDERED** that in connection with the promotion, advertising, marketing, sale, or offering for sale of any product or service, Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through a trust, corporation, subsidiary, division, or other device, or any of them, are hereby preliminarily restrained and enjoined from registering any new domain names to promote a Web site, product or service, without notifying counsel for the Commission within 72 hours of such registrations.  The notice shall include:

A.   The true identity of the registrant, account holder, or user, including the complete and accurate physical mailing address, email address, and telephone number;

B.   The name and address of the person or entity to whom such registration was submitted;

C.   The date of the registration; and

D.   The purpose of the domain names registered.

10

## VI.

## <u>INJUNCTION AGAINST USING ANY PERSONS OR ENTITIES TO SEND COMMERCIAL EMAIL WITHOUT REPORTING</u>

**IT IS FURTHER ORDERED** that in connection with the promotion, advertising, marketing, sale, or offering for sale of any product or service, Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through a trust, corporation, subsidiary, division, or other device, or any of them, are preliminarily restrained and enjoined from using any affiliates, sub-affiliates, agents, mailers, vendors, employees, contractors, or other persons or entities to send commercial email on their behalf without prior notification to the Monitor appointed pursuant to Section VII or, if the Monitor has not yet been appointed, to counsel for the FTC. The notice shall include:

A.      The identity of the affiliate, sub-affiliate, agent, mailer, vendor, employee, contractor, or other person or entity including the name of an individual or entity, a physical mailing address, a working email address, a working telephone number, and any identification codes associated with or used by such person or entity;

B.      The amount of payment and information necessary to process such payment for the affiliate, sub-affiliate, agent, mailer, vendor, employee, contractor, or other person or entity, including the account name and number used;

C.      A representative copy of the body and subject line of each version of a commercial email being sent by a Defendant or that is provided to a Defendant by an affiliate or mailer. Defendants shall request each affiliate or mailer to provide them with a copy of each email version;

11

D.     A list of each of the email addresses which the affiliate, sub-affiliate, agent, mailer, vendor, employee, contractor, or other person or entity represents is being used to send the commercial email message;

E.     A list of each of the Corporate Defendants' email addresses and/or domain names promoted in the commercial email message; and

F.     A description of the procedures Defendants have to ensure that such person or entity complies with Sections I-IV of this Order.

## VII.

## APPOINTMENT OF MONITOR

**IT IS FURTHER ORDERED** that _____ is appointed as Monitor ("Monitor") for Defendants' business activities related to the promotion or sale of any product or service over the Internet ("Internet Business"). The Monitor is appointed with directions and authority to accomplish the following:

A.     Monitor all Internet Business activities, assets, and financial transactions of Defendants, whether acting directly or through a trust, corporation, subsidiary, division, or other device, including but not limited to:

1.     Monitoring future Internet Business financial transactions, including but not limited to revenues and expenditures;

2.     Reviewing information pertaining to Internet Business activities, including but not limited to advertising, marketing, and customer service; and

3.     Monitoring Defendants' Internet Business activities to assure that they are in compliance with this Order.

12

B.   The Monitor shall have unfettered access upon reasonable notice and at reasonable times to all Internet Business financial and marketing information that the Monitor deems necessary to carry out his duties pursuant to this Order, to the same extent as Defendants themselves are allowed by right, contract, or practice, including but not limited to:

    1.   Access to all documents pertaining to Defendants' Internet Business activities and finances;

    2.   Access to all property or premises in possession of, owned by, or under the control of Defendants used for Internet Business, wherever located;

    3.   The right to interview any employee;

    4.   The right to interview any officer or independent contractor involved in the provision of any services to or on behalf of Defendants; and

    5.   Monitoring and observing Defendants.

C.   Defendants are enjoined and restrained from interfering in any way with the functions and duties of the Monitor and shall take no action, directly or indirectly, to hinder or obstruct the Monitor in the conduct of his duties. Defendants are ordered and directed to assist and participate with the Monitor in carrying out their duties.

D.   The Monitor shall have the right to copy and maintain records to which he has access, pending further Order of this Court. The Monitor shall protect the confidentiality of such documents, and shall not disclose such documents to anyone other than the parties and the Court. The Monitor shall provide access to

13

all documents or other material he obtains pursuant to this Section to any party upon request.

E.    The Monitor shall provide observations and recommendations to this Court, upon reasonable notice to the parties, and request guidance and instructions from this Court, if the Monitor deems it necessary. The Monitor shall prepare and submit a Report to this Court forty-five (45) days after issuance of this Order, describing the Monitor's activities and findings.

F.    The Monitor shall be entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses. All fees and expenses incurred by the Monitor pursuant to this Section shall be paid by Defendants. Upon appointment, the Monitor shall be given a retainer fee of ten thousand dollars ($10,000) and is initially authorized to incur fees and expenses up to $20,000. The Monitor shall provide the parties with bi-weekly statements of fees and expenditures. The Monitor shall file with the Court, and serve on the parties, periodic accounts and requests for the payment of additional reasonable compensation. The Monitor shall not increase the Monitor's fee rate billed without prior approval of the Court.

G.    No bond shall be required in connection with the appointment of the Monitor. The Monitor, those assisting him and/or her professionals shall not be personally liable for any loss or damage incurred by reason of any act performed or omitted by any Defendant. The Monitor shall be held harmless for any act or omission by

14

any Defendant that occurs during the Monitor's performance of his duties and responsibilities hereunder.

H.     Notwithstanding the foregoing, the Monitor is appointed by the Court to serve only as a monitor, not as a receiver, and does not assume any rights, duties, functions or responsibilities with regard to the use, operation, management, repair, replacement, protection, or improvement of the corporate and limited liability company Defendants' real or personal property.

***Provided, however***, that nothing in this Section shall be interpreted to waive any Defendant's claim of Fifth Amendment privilege or attorney-client privilege, subject to the Court's determination upon *in camera* inspection upon the request of the Monitor or Plaintiff.

## VIII.

## ASSET PRESERVATION

**IT IS FURTHER ORDERED** that:

A.     Defendants, whether acting directly or through a trust, corporation, subsidiary, division, or other device, or any of them, are hereby preliminarily restrained and enjoined from, directly or indirectly, transferring, converting, encumbering, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, perfecting a security interest in, or otherwise disposing of any assets wherever located, inside or outside of the United States of America, that are:

1.     owned or controlled by, or held, in whole or in part, for the benefit of, or subject to access by, or belonging to, any Defendant; or

15

2. in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership, trust or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant.

B. The assets affected by this Section shall include both existing assets and assets acquired after the effective date of this Order.

C. Notwithstanding Section VIII.A and B above, Defendants, whether acting directly or through a trust, corporation, subsidiary, division, or other device, or any of them, may:

1. enter into agreements and incur obligations in the usual and ordinary course of living and in operating their businesses, *provided that* any such agreement or obligation which exceeds $5,000 in value as to living or $20,000 as to business must be previously approved by the Court, counsel for the FTC, which consent of counsel for the FTC shall not be unreasonably withheld, or by the Monitor, upon providing counsel for the FTC with two days prior notice; and

2. withdraw and utilize usual, ordinary, and reasonable living and business expenses, as approved by the Court, or as agreed to in writing by counsel for the FTC as to the amounts released, the applicable time period, the applicable account or source of the funds, and the requisite of accounting of expenses, *provided*

16

***further*** that, upon providing counsel for the FTC with two days

prior notice, the Monitor may approve additional reasonable and

necessary business expenses.

D.     Upon being served with a copy of this Order, notwithstanding anything in Section

X of this Order, Oceanic Telecommunications Services, LLC, 830 Bear Tavern

Road, Trenton, NJ 08628, shall hold and retain within its control and prohibit the

withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement,

dissipation, conversation, sale or other disposal of any account or asset of, or held

on the behalf of, any Defendant, including Cleverlink Trading Limited, unless

authorized in writing by the Court or counsel for the FTC.

## IX.

### <u>REPATRIATION OF FOREIGN ASSETS AND DOCUMENTS</u>

**IT IS FURTHER ORDERED** that within five (5) days following entry of this Order,

each Defendant shall:

A.     Use reasonable efforts to repatriate to the United States all assets and all

documents located in foreign countries held, directly or indirectly:

1.     by any Defendant;

2.     for any Defendant's benefit; or

3.     under any Defendant's direct or indirect ownership or control;

B.     Within one business day of a Defendant learning of any repatriation under

Paragraph A above, notify the Commission of the name and location of the

financial institution or other entity that is the recipient of such assets or documents

and the corresponding account names or numbers;

C.     In the event that Defendants do not repatriate to the United States any assets covered by Section IX.A of this Order, Defendants shall provide a statement to counsel for the FTC containing: (1) a description of the assets, (2) the location of the assets, (3) the estimated value of the assets; and (4) the reason why the assets have not been repatriated; and

D.     Each Defendant shall provide the Commission access to Defendants' records and documents held by financial institutions or other institutions outside the territorial United States, by signing, and returning to counsel for the FTC, the Consent to Release of Financial Records attached to the Court's *ex parte* Temporary Restraining Order entered on May 16, 2005 as Attachment D.

## X.

## DUTIES OF PERSONS OR ENTITIES HOLDING DEFENDANTS' ASSETS LIFTED

**IT IS FURTHER ORDERED** that the obligations and duties of persons or entities holding Defendants' assets provided for in Section XI of the Modified Temporary Restraining Order are hereby lifted.

## XI.

## PRESERVATION AND MAINTENANCE OF RECORDS AND NOTICE OF NEW VENTURES

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through a trust, corporation, subsidiary, division, or other device, or any of them, are hereby preliminarily restrained and enjoined from:

A. Destroying, erasing, mutilating, falsifying, concealing, writing over, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents or records, including but not limited to, any and all computerized files, storage media (including but not limited to floppy disks, hard drives, CD-Roms, Zip disks, punch cards, magnetic tape, backup tapes, and computer chips) on which information has been saved (including any and all equipment needed to read any such material), contracts, accounting data, registrations, correspondence, advertisements (including, but not limited to, advertisements placed on the World Wide Web or the Internet or sent via email), FTP logs, Service Access Logs, USENET Newsgroups postings, World Wide Web pages, email messages, books, written or printed records, telephone logs, telephone scripts, receipt books, ledgers, business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business tax returns, and other documents or records of any kind relating to their business practices;

B. Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

C. Creating, operating, or exercising any control over any entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the Commission with a written statement disclosing:

1. the name of the business entity;

19

2.      the address, telephone number, email address, and Web site address of the

        business entity; and

3.      a detailed description of the business entity's intended activities.

## XII.

## DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this

Order to each officer, agent, servant, employee, attorney, and upon those persons in active

concert or participation with them. Within ten (10) calendar days from the date of entry of this

Order, each Defendant shall serve on the Commission an affidavit identifying the name, title,

address, telephone number, date of service, and manner of service of each person or entity

Defendant served with a copy of this Order in compliance with this provision.

## XIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for

all purposes.

*//*

*//*

*//*

*//*

*//*

*//*

*//*

20

## XIV.

## STIPULATION OF THE PARTIES

The Commission and Defendants, by and through their counsel, stipulate to the entry of

this Stipulated Preliminary Injunction.

FOR THE PLAINTIFF:                    FOR THE DEFENDANTS:

STEVEN M. WERNIKOFF                   SEAN MOYNIHAN
Federal Trade Commission             Klein, Zelman, Rothermel & Dichter, L.L.P
55 East Monroe Street, Suite 1860    485 Madison Avenue
Chicago, Illinois 60603              New York, NY 10022-5803
(312) 960-5634 [Telephone]           (212) 935-6020 [Telephone]
(312) 960-5600 [Facsimile]           (212) 753-8101 [Facsimile]
Attorney for Plaintiff               Attorney for Defendants

**SO ORDERED,** this ___ day of _____ June _____, 2005.

Hon. Amy J. St. Eve
United States District Judge

21