# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 2889 | **DATE** | 3/13/2006 |
| **CASE TITLE** | FTC vs. Cleverlink | | |

**DOCKET ENTRY TEXT**

MOTION by Plaintiff Federal Trade Commission to compel *production of documents pursuant to Rule 34(a)* [70] is granted in part, and denied in part, without prejudice. Defendants have until March 20, 2006 to produce the documents and information required under the minute order.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Plaintiff the Federal Trade Commission (the "FTC") has filed a motion to compel Defendants to produce relevant documents in their control pursuant to Federal Rule of Civil Procedure 34(a) (the "Motion"). Specifically, the Motion takes issue with documents that the Defendants have withheld on the basis of attorney-client privilege and attorney work product. These documents currently are in the possession of Chris and Sheila Services, LLC ("CSSI") – the bookkeeper for Defendants Cleverlink and Real World Media ("RWM"). For the reasons below, the Court grants the FTC's Motion in part, and denies it in part, without prejudice.

## BACKGROUND

On August 15, 2005, the FTC served Defendants with discovery requests asking for relevant business and financial records. (R. 71-1, Pl.'s Motion at 2.) On August 30, 2005, the FTC served CSSI – Defendant Caleb Wickman's mother allegedly operates CSSI – with a subpoena requesting documents, including financial records, business records and customer service documents relating to all Defendants, including the individual Defendants. (R. 79-1, Defs.' Opp. at 2.) The parties agreed that both Defendants and CSSI (who is represented by the same counsel that represents Defendants) would respond to the FTC's discovery requests on September 26, 2005. (R. 71-1, Pl.'s Motion at 2.)

On September 26, 2005, the FTC received faxed discovery responses from Defendants and CSSI. (*Id.*) Neither response included documents. (*Id.*) On September 29, 2005, the FTC received a CD-ROM from CSSI, which contained four spreadsheets, one invoice, and seven emails. (*Id.*) On October 3, 2005, the FTC received a supplemental response from CSSI that included four spreadsheets, two emails, and a privilege log, identifying 75 items Defendants withheld as privileged or attorney work product. (*Id.*; R. 79-1, Defs.' Opp. at 2.) According to the FTC, "[t]he privilege log was the largest document." (R. 71-1, Pl.'s

**STATEMENT**

Motion at 2.) On October 5, 2005, Defendants produced 475 pages of additional discovery, over 400 pages of which comprises records of corporate filings and print-outs from Defendants' websites. (*Id.* at 2-3.) The remaining documents consisted of a ledger, a spreadsheet, and a few pages of correspondence, but no privilege log. (*Id.* at 3.)

Thereafter, the FTC objected to these discovery requests and conferred with the Defendants' and CSSI's counsel. (*Id.*; R. 79-1, Defs.' Opp. at 3.) On October 28, 2005, Defendants produced to the FTC an additional 105 pages of documents, including a few spreadsheets, and partial bank records of a single bank account. (R. 71-1, Pl.'s Motion at 3; R. 79-1, Defs.' Opp. at 3 ("On or about October 28, 2005, Defendants supplemented their discovery responses in an attempt to clarify any unresolved issues.").) Notwithstanding Defendants supplemental production, the FTC moves to compel, contending that "Defendants have provided minimal records . . . Defendants' entire response can fit in a letter-size accordion folder. Considering the volume and scale of the Defendants' business – grossing over $7 million since January 1, 2004, utilizing services all over the world, and paying out over $1.8 million to various affiliates – the notion that Defendants' various operations would have generated so few documents is difficult to believe." (R. 71-1, Pl.'s Motion at 3-4.)

Defendants explain their scant production: "the majority of financial and business transactions entered into by Defendants take place via the Internet. Defendants . . . check their bank statements online, receive and pay invoices online, and request wire transfers online. As such, Defendants and CSSI rarely receive paper invoices and/or statements from vendors, affiliates or banks." (R. 79-1, Defs.' Opp. at 3.) In addition, Joel R. Dichter, counsel for Defendants and CSSI, submits an "affirmation" wherein he asserts that:

> [The] privilege log consist[s] virtually entirely of items, such as e-mail correspondence between Sheila Wickman, Defendants and Defendants'/CSSI's counsel, draft expense reports, draft asset reports, draft balance sheets, and draft profit and loss statements, prepared after the commencement of litigation in connection with supplying information to Plaintiff's counsel, the Court or the Monitor. Each of the aforementioned draft reports was prepared by Sheila Wickman at the direction of Defendants Cleverlink and RWM and/or counsel in order to assist counsel in the preparation of a defense."

(R. 79-2, Aff. of Joel R. Dichter at ¶¶8-9.) In addition, Mr. Dichter avers that "those documents in Defendants' and CSSI's possession that were not privileged and were responsive to Plaintiff's discovery requests and subpoena were produced, including general ledgers for Cleverlink and RWM that show each and every debit and credit to their respective bank accounts for the period in question." (*Id.* at ¶12; R. 79-1, Defs.' Opp. at 6 (asserting that "the spread sheets for which Defendants assert the work product privilege are simply drafts of asset, expense, profit and loss and balance sheet reports that have been, in most instances, already provided in final form to the Plaintiff, Court, or Monitor").)

Defendants have produced a privilege log and have submitted the withheld documents to the Court for *in camera* review.

**ANALYSIS**

**I.        Legal Standard**

    **A.        The Attorney-Client Privilege**

**STATEMENT**

As an initial matter, because the FTC brings this action under the Federal Trade Act, the federal common law of privileges governs the Court's analysis here. *See* F.R.E. 501; *In re Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983) (in non-diversity cases privilege is "clearly a matter of federal common law; state-created principles of privilege do not control.").

Regarding the elements of attorney-client privilege, the "[Seventh] Circuit has long embraced the articulation of the attorney-client privilege first set forth by Dean Wigmore in his 1904 treatise Evidence in Trials at Common Law:"

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (further noting that "[t]he party seeking to invoke the privilege bears the burden of proving all of its essential elements").

Because it "is in derogation of the search for the truth," *id.*, "[t]he attorney-client privilege [must] be strictly confined within the narrowest possible limits consistent with the logic of its principle, [*i.e.*] to protect only such information a client communicates to his attorney so that the attorney may properly, competently and ethically carry out his representation." *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir. 1983) (internal quotation and citation omitted). Stated differently, the attorney-client "privilege only prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice." *Id.* (internal quotation omitted); *see also Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) ("statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client") (internal citation omitted)). Conversely, "the attorney-client privilege does not prohibit the disclosure of *all* communications between a client . . . and her attorney" and does not protect "things which, at the time, are not intended to be held in the breast of the lawyer, even though the attorney-client relation provided the occasion for the lawyer's observation of them." *Weger*, 709 F.2d at 1154 (emphasis original; internal quotation omitted).

In addition, the attorney-client privilege "reaches communications involving a third party [such as an accountant] only where that third party is enlisted to 'translate' the client's communications so that the attorney can understand them, or is enlisted to 'interpret' the client's situation or data in order to make that situation or data understandable by the lawyer. Stated another way, the attorney and/or client must have enlisted the third party in order to facilitate comprehension by the lawyer of communications or information from the client." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1071 (N.D. Cal. 2002); *Black & Decker Corp. v. United States*, 219 F.R.D. 87, 90 (D. Md. 2003) ("[S]everal courts have recognized that the attorney-client privilege may protect exchanges between the client and an accountant when the accountant enables communication with the attorney by 'translating' complex accounting concepts."); *see also In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("material transmitted to accountants may fall under the attorney-client privilege if the accountant is acting as an agent of an attorney for the purpose of assisting with the provision of legal advice [because] [w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service or if the advice sought is the accountant's rather than the lawyer's, no privilege exists" (internal quotation, citation, and punctuation omitted)).

**STATEMENT**

### B. The Work Product Doctrine

"The attorney work product doctrine, first laid out in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), protects otherwise discoverable documents and tangibles, and was subsequently codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure." *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 533-34 (N.D. Ill. 2003). Rule 26(b)(3) states:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3). "The purpose of the qualified privilege for attorney work product . . . is to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary. It also prevents a litigant from taking a free ride on the research and thinking of his opponent's lawyer." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (internal quotation and citation omitted).

The work product doctrine, which "provides an exception to the otherwise liberal discovery rules, does not protect factual information that a lawyer obtains when investigating a case." *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D. Ill. 2005). Indeed, "[i]t is settled law that the work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned . . ." *Id.* (internal citation, quotation and punctuation omitted). "Phrased differently, Rule 26(b)(3), while it prohibits discovery of protected documents, does not prohibit disclosure of the underlying facts." *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 546 (N.D. Ill. 2005); *see also United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999) (rejecting the "argument that numerical information can never fall within the attorney-client or work-product privilege"). "As with the attorney-client privilege, the burden is on the discovery opponent to establish that the work product doctrine immunizes the documents at issue from discovery." *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 499 (N.D. Ill. 2001) (citing *Binks Mfg. Co. v. Nat'l Presto Indust. Inc.*, 709 F.2d 1109, 1119 (7th Cir.1983)).

## II. Defendants' Assertions of Privilege

Defendants have withheld eight documents on the basis of attorney-client privilege. After reviewing these documents (which are identified below by the Bates number of their starting page) and with the above principles in mind, the Court finds as follows:

> **PRIV0001:** This is an email from Sheila Wickman, a third party (Defendants' accountant) to Defendants' counsel. This communication does not "interpret" any sort of accounting issue. Accordingly, this document is not privilege. *See ChevronTexaco*, 241 F. Supp. 2d at 1071; *Black & Decker*, 219 F.R.D. at 90.
>
> **PRIV0004:** The document is an email from Sheila Wickman to Defendants and their counsel

wherein Ms. Wickman merely forwards an email from a third party. The email attaches a ledger from one of Cleverlink's bank accounts, which, according to the privilege log, is privileged because it pertains to a "legal retainer." The document appears to be a bank statement that identifies payments to scores of entities, as well as identifying certain payments to Defendants' counsel. As such, this document is not privileged. *See, e.g., Matter of Witnesses Before The Special March 1980 Grand Jury*, 729 F.2d 489, 491 (7th Cir. 1984) ("The general rule is well established that information regarding a client's fees is not protected by the attorney-client privilege because the payment of fees is not a confidential communication between the attorney and client.").

**PRIV0048:** This document is an email from Defendants' counsel forwarding an email from a third party to Defendants as well as Ms. Wickman. The underlying email, originating as it does from a third party, is not privileged. Further, counsel's email is not privileged because counsel merely requests that his clients and their accountant provide information in response to the third-party's inquiry. *See Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005) ("Nor are communications from the attorney to the client automatically privileged. Rather, those communications are privileged only: (1) if it is shown that the client had a reasonable expectation in the confidentiality of the statement; or, put in another way, if the statement reflects a client communication that was necessary to obtain informed legal advice (and) which might not have been made absent the privilege; or (2) if the communications 'tend to directly or indirectly reveal a client confidence." (internal citation, punctuation and quotation omitted)).

**PRIV0052:** After carefully reviewing this document, the Court concludes that it is privileged.

**PRIV0057**: This document is an email regarding the logistics of Defendants' payment of legal fees. As such, this document is not privileged. *See, e.g., Matter of Witnesses*, 729 F.2d at 491.

**PRIV0059**: After carefully reviewing this document, the Court concludes that it is privileged.

**PRIV0061**: This document is not privileged because the communication contained therein is not incident to the provision of legal advice. *See Evans*, 113 F.3d at 1461.

**PRIV0364**: After carefully reviewing this document, the Court concludes that it is privileged.

Defendants must produce the non-privileged documents to the FTC by March 20, 2006.

**III.     Defendants' Assertions of Work Product**

Defendants have withheld the remaining documents on the basis of attorney work product. With the exception of a handful of documents, Defendants describe each item as a "[d]raft report prepared at the direction of counsel," created by Sheila Wickman or Cleverlink Accounting. Among other things, these documents describe: (1) the financial transactions of RWM and Cleverlink; (2) "Affiliate Payouts/Referral Fees"; (3) lists of internet addresses; and (4) a vendor contact list. It is not at all evident from the face of the documents whether the information therein constitutes work product. It is possible, however, that this information could reflect counsel's mental impressions to some extent. For example, these draft reports may reflect only certain, select facts and could thereby highlight what information counsel deems most relevant to his client's case. *See, e.g., Frederick*, 182 F.3d at 501 (numerical information can fall within the work-product privilege); *see also In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D.

**STATEMENT**

515, 527 (N.D. Ill. 1990) ("drafts, if they are otherwise work product, do not lose that status because the final document is made public. (Indeed, any other result would make every attorney's draft briefs subject to discovery.) The fact that drafts were written by a non-attorney makes no difference under Rule 26 if a primary concern in drafting the document is defense of litigation." (parentheses original)). Regardless, the author of these "draft reports" must have culled the factual information contained therein from Defendants' records. This underlying factual information is not protected by the work product doctrine, *Jewel Food Stores*, 231 F.R.D. at 346; *Tyson*, 230 F.R.D. at 546, and Defendants must produce it to the FTC.

**CONCLUSION**

For the above stated reasons, the Court grants the FTC's motion to compel in part and denies it in part without prejudice. Defendants must produce the documents improperly withheld on the basis of attorney-client privilege as identified above by March 20, 2006. In addition, by March 20, 2006, Defendants must: (1) produce *all* of the underlying factual information contained in the documents they have withheld on the basis of attorney work product and submit to the Court an affidavit by counsel swearing that all such information has been turned over, or (2) submit to the Court an affidavit expressly swearing that *all* underlying factual information already has been produced to the FTC. At this time, the Court is not compelling Defendants to produce the "draft reports."