IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05 C 2889 |
| v. | ) | |
| | ) | |
| CLEVERLINK TRADING LIMITED, *et al.*, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OCEANIC TELECOMMUNICATIONS | ) | |
| SERVICES, LLC, and COLIN SHOLES | ) | |
| | ) | |
| Relief Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

The Federal Trade Commission ("FTC") brought an action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and under Section 7(a) of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7706, to obtain injunctive and other equitable relief for Defendants' violations of CAN-SPAM, 15 U.S.C. § 7701, *et seq.*, and the FTC's Adult Labeling Rule, 16 C.F.R. Part 316.4. On June 29, 2005, this Court entered a Stipulated Preliminary Injunction. One provision of the injunction applied to a then third party, Oceanic Telecommunications Services, LLC ("Oceanic"). The provision directed that upon being served with the order, Oceanic "shall hold and retain . . . any account or asset of, or held on behalf of, any Defendant, including Cleverlink Trading Limited." The FTC asserts that Oceanic and its primary officer, Colin Sholes, violated this provision, and urges that they be required to show cause why they should not be held in contempt of court. In defense,

Oceanic and Colin Sholes argue that (I) they cannot be held in contempt of court because they never violated the provision in question; (ii) this Court lacks jurisdiction over the subject matter in controversy – the funds allegedly held on behalf of Cleverlink; and (iii) they are not subject to personal jurisdiction in the State of Illinois.

This Court has jurisdiction over the persons of Oceanic and Colin Sholes and the subject matter in controversy. Because the nationwide service provision in § 13(b) of the FTC Act creates personal jurisdiction over any person, corporation or partnership, this Court had personal jurisdiction over both Oceanic and Colin Sholes at that time the preliminary injunction was entered. As to the subject matter – the funds in Oceanic's bank account that allegedly were held on Cleverlink's behalf – this Court has jurisdiction to determine the legitimacy of claims to any such asset alleged to be proceeds from a violation of federal law. Finding that jurisdiction exists, the Court reserves its decision on whether Oceanic or Colin Sholes violated the injunction until after further discovery can be completed, including the deposition of Colin Sholes.

## Background

The original Defendants in this action sent commercial email messages promoting sexually-oriented internet websites and collected payment for access to the material on these sites. One of the Defendants is Cleverlink Trading Limited ("Cleverlink"). On March 14, 2005, Cleverlink signed a Merchant Payment Processing Services Agreement with Oceanic. (Relief Defendants' Response to FTC's Supplemental Submission Regarding the Court's Jurisdiction Over Oceanic and Sholes, Ex. B.) The terms of the agreement called for Oceanic to provide "online payment processing" and "processing services" to Cleverlink. (*Id.* at 2.)

According to the Declaration of Colin Sholes, Oceanic's primary officer, "Oceanic does not process credit card transactions."[1] (Declaration of Colin Sholes Regarding Jurisdiction Proffer and Evidentiary Submission on Rule to Show Cause Pursuant to 28 U.S.C. § 1746 ("Sholes Decl.") ¶ 37.) Instead, he explains that Oceanic acts only as a sub-account holder in the payment process between customer and merchant. (*Id.* ¶ 5.) As a sub-account holder, Oceanic develops contractual relationships with merchants that want to accept credit card payments from customers. (*Id.* ¶ 8.) Oceanic then serves as an intermediary, a transmittal agent, from the master merchant account holder to the merchant. (*Id.* ¶ 37.)

As described by Colin Sholes, the payment process begins when a customer fills out an order and credit card information on a merchant's website. (*Id.*) That information gets forwarded to a gateway processor, who writes software that collects and processes credit card information. (*Id.*) From there, the information is passed on to a merchant bank, who provides initial approval of the transaction, and credits the merchant account. (*Id.*) A master account holder manages the merchant account where the merchant bank deposits the funds. (*Id.* ¶ 6.) A master account holder may issue sub-accounts from which the funds pass to the merchant. (*Id.* at ¶¶ 7-8.) Oceanic held one of these sub-accounts. (*Id.*) In summary, the credit card funds flow downstream from the merchant bank to the master merchant account holder to the sub-account holder (Oceanic) to the merchant (Cleverlink). (*Id.* ¶ 9.) When a charge or fee is assessed on the account it flows in the same manner with each party/agent in the chain being responsible to reimburse the party above it. (*Id.* ¶¶ 11-12.) Oceanic's recourse being against Cleverlink for any fees or charges imposed on Oceanic by the master account holder for Cleverlink's account. (*Id.*)

---

[1] Given the Court's interpretation of the nationwide service provision, the admissibility or weight of each party's allegations and evidence need not be resolved for purposes of determining jurisdiction.

In three separate disbursements, a total of $517,168.80 were deposited in Oceanic's account as the sub-account holder for Cleverlink. (Oceanic's Opposition to the FTC's Motion to Show Cause, Ex. 3.) Of those total receipts, Oceanic transmitted only $136,539.54 to Cleverlink pursuant to the Merchant Payment Processing Services Agreement. (*Id.*) Oceanic alleges that during April, May and June of 2005, Cleverlink incurred a number of fees and charges against its funds held by Oceanic – fees and fines totaling $364,022.28. (*Id.*)

The FTC served Oceanic with the Stipulated Preliminary Injunction on June 30, 2005. (FTC's Motion To Preserve Assets and For Rule To Show Cause As To Why Third Party Oceanic Should Not Be Held In Contempt Of Court, Att. B.) The preliminary injunction directed that upon being served with the order, Oceanic "shall hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any account or asset of, or held on behalf of, any Defendant, including Cleverlink Trading Limited, unless authorized in writing by the Court or counsel for the FTC." (*Id.*) The stipulated injunction replaced an earlier *ex parte* TRO that was served on Oceanic on June 28. (*Id.*, Att. A.) The TRO did not reference Oceanic specifically, but it did order the retention of funds owned, controlled or held by or for the benefit of Cleverlink. (*Id.*) When served with the preliminary injunction, Oceanic's bank account contained more than $300,000. (FTC's Reply Memo in Support of its Motion To Preserve Assets and For Rule To Show Cause As To Why Third Party Oceanic Should Not Be Held In Contempt Of Court, Att. D, Bresnahan Declaration ("Bresnahan Decl.") ¶ 5©, Ex.1 at WCB0054). Cleverlink was Oceanic's first client. (Sholes Decl. ¶ 20.) Oceanic alleges that it "had one other customer located in St. Petersburg, Florida," but presents no other evidence regarding this client and admits that it currently has no business. (*Id.*)

From July 22, 2005 through September 30, 2005, $245,000 was withdrawn or transferred from the account containing Cleverlink's funds. (Bresnahan Decl. ¶ 5(c), Ex.1 at WCB0057-58.) Colin Sholes personally withdrew $85,000 in cash increments of $9,000 or $9,500. (*Id.* at WCB0060-68.) No evidence has been presented as to where these monies were disbursed after being withdrawn or transferred from Oceanic's account.

## DISCUSSION

Section 13(b) of the FTC Act permits the FTC to seek an injunction whenever it believes a corporation is violating or about to violate the Act. 15 U.S.C. § 53(b).[2] Rule 65 empowers this Court to enter a binding injunction "upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who

---

[2] Temporary restraining orders; preliminary injunctions

Whenever the Commission has reason to believe–

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
(2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint

is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public–

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however*, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further*, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

15 U.S.C. § 53 (b)

receive actual notice of the order by personal service or otherwise."[3]  Fed. R. Civ. P. 65(d).

Oceanic and Colin Sholes challenge this Court's jurisdiction, both personal and subject matter, to

have entered a preliminary injunction prohibiting them from withdrawing or transferring the funds

in Oceanic's account that allegedly were held on behalf of Cleverlink.

## I.      Personal Jurisdiction

While the FTC Act and Rule 65 prescribe certain remedial or equitable measures, a court still

must have jurisdiction over any person against which that power is exercised.  *See Insur. Corp. of*

*Ireland, Ltd. v. Compagnie des Bauxities de Guinee*, 456 U.S. 694, 711 n.1 (1982) ("A district court

must have personal jurisdiction over a party before it can enjoin its actions"); *U.S. v. Kirschenbaum*,

156 F.3d 784, 795 (7th Cir. 1998) ("The district court's attempt to enjoin Mrs. Kirschenbaum and

other third-parties over whom the court had no personal jurisdiction is void and so binding on no

one").  This limit on a court's equitable reach applies even to assets that are alleged to be proceeds

of unlawful acts.  *See Kirschenbaum*, 156 F.3d at 795 ("However convenient it might be for the

government to violate the due process rights of some citizens in an effort to seize property that it

contends is forfeitable, we see no way that it could do so [absent personal jurisdiction]").

The FTC bears the burden of establishing that personal jurisdiction is proper; satisfying that

burden, however, requires only a prima facie showing.  *See RAR, Inc. v. Turner Diesel, Ltd.*, 107

F.3d 1272, 1276 (7th Cir. 1997).  In determining whether the FTC has met this burden, this Court

accepts as true all uncontroverted allegations made by both the FTC and Oceanic but resolves all

factual disputes in the FTC's favor.  *See Hyatt v. Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir.

---

[3] In its role as a sub-account holder, Oceanic acted as an agent for Cleverlink.  (Sholes Decl. ¶¶ 8-13.); *see
Reliable Personnel Inc v. Custom Cartage, Inc.*, 1994 WL 406405, *3 (N.D. Ill. 1994) ("Under Rule 65(d) an agent is
bound by an order granting an injunction against its principal regardless of whether the agent is joined as a party"), citing
*Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980).

2002); *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir. 1988). The FTC offers two alternative bases for the Court's personal jurisdiction over Oceanic and Colin Sholes. One, the nationwide service of process clause in § 13(b) of the FTC Act and, two, Oceanic's contacts with the state of Illinois stemming from both its role as an intermediary for the transmission of consumer credit card charges that originated with Illinois customers and from Oceanic's operation of a website accessible by Illinois residents. *See Swaim v. Moltan Co.*, 73 F.3d 711, 719-20 (7th Cir. 1996) ("[A] federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amendable to service").

The FTC brought this action against Cleverlink and other Defendants under § 13(b) for alleged violations of the FTC Act. In cases involving a federal question, the scope of a district court's personal jurisdiction extends as far as the jurisdiction of the courts of general jurisdiction of the State in which it sits or as far as its power to enforce process. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201-02 (7th Cir. 1997); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (stating that for personal jurisdiction to be exercised over a party "there must be authorization for service"); Fed. R. Civ. P. 4(k)(1)(D) ("[S]ervice is effective to establish jurisdiction over the person of a defendant when authorized by a statute of the United States").[4]

Section 13(b) provides that "[i]n any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found." 15 U.S.C. § 53(b). This language, and similar language from other federal statutes, has been interpreted to permit nationwide service

___

[4] Although often cited as such, Rule 4(k)(1)(D) is not a necessary compliment to a nationwide service of process provision in creating personal jurisdiction, but instead "merely calls attention to federal legislation that may provide for nationwide or even world-wide service of process in cases arising under particular federal laws." Advisory Committee Notes, 1993.

of process.[5] *See F.T.C. v. Bay Area Business Council, Inc.*, 2003 WL 21003711, *2 (N.D. Ill. 2003); *see also Fitzsimmons v. Barton*, 589 F.2d 330, 332 (holding that Securities Exchange Act provides for nationwide service of process). Because a statute "creates personal jurisdiction by authorizing service," the nationwide service provision in § 13(b) effectively "creates personal jurisdiction over anyone within the United States." *Lisak v. Mercantile Bancorp., Inc.*, 834 F.2d 668, 671-72 (7th Cir. 1987); *see Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served"). Absent such as a nationwide service of process provision, due process requires that a person or corporation have minimum contacts with the forum state before a court may exercise personal jurisdiction. *See Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 808 n.3 ("Ordinarily, such service establishes a district court's personal jurisdiction only if a court of the state in which the district court sits would have personal jurisdiction"). But where nationwide service is authorized by federal law the relevant question becomes whether the person or corporation has minimum contacts with the United States. *See Fitzsimmons*, 589 F.2d at 332; *Zurich Capital Markets v. Conlianese*, 388 F. Supp.2d 847, 857 (N.D. Ill. 2004).

Oceanic and Colin Sholes do not challenge the fact that they have minimum contacts with the United States. Rather, they argue that the nationwide service provision only authorizes service on violators or potential violators of the Act. While true that the FTC has never contended that either Oceanic nor Colin Sholes was violating or was about to violate the FTC Act, § 13(b)

---

[5] Although not relevant here, the language "wherever it may be found" also can be read to authorize worldwide service of process. *See Central States, Southeast and Southwest Areas Pension Fund v. Reimer*, 230 F.3d 934, 941 (7th Cir. 2000).

authorizes service of process on "any person, partnership, or corporation." Thus, by its plain language, nationwide service of process is not restricted to alleged violators or parties to the suit. *See Bob Jones University v. Simon*, 416 U.S. 725, 732 n.6 (1974) (interpreting language "any person" to include third parties who were not themselves subject to tax liability); *Mullane v. Chambers*, 333 F.3d 322, 331 (1st Cir. 2003) (holding that in using the term "any person" in recording statute Congress intended the broadest possible inclusion); *U.S. v. Shear*, 962 F.2d 488, 495 (5th Cir. 1992) (stating that "any person" under OSHA included independent third parties). Section 13(b)'s inclusive language contrasts with other nationwide service provisions that state that "process in such cases may be served in any other district of which the *defendant* is an inhabitant or wherever the *defendant* may be found." 7 U.S.C. § 13a-1(e) (emphasis added); 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa. Reading the plain language of the statute, Congress granted district courts the power to enforce process against any person, partnership, or corporation in suits brought pursuant to § 13(b) of the FTC Act. Oceanic and Colin Sholes being amenable to service of process in this suit, the Court had personal jurisdiction to enjoin their actions and may punish them with contempt for any violations of that injunction. *See Omni Capital*, 484 U.S. at 104 (stating that for personal jurisdiction to be exercised "there must be a basis for the defendant's amenability to service").

Given the finding of personal jurisdiction over Oceanic and Colin Sholes under § 13(b), the Court will not address the FTC's alternative argument that minimum contacts exist based on Oceanic's role in processing Cleverlink's credit card transactions and operating a website accessible to Illinois residents.

## II.     Subject Matter Jurisdiction

"Courts have jurisdiction to decide the legitimacy of ownership claims made by non-parties to assets alleged to be proceeds of securities laws violations." *S.E.C. v. Cherif*, 933 F.2d 403, 414 n.11 (7th Cir. 1991). The funds held in Oceanic's account are alleged to be proceeds of FTC Act violations. As such, this Court has subject matter jurisdiction to decide the legitimacy of Oceanic's claim to those assets. *Id.*; *see also F.T.C. v. Productive Marketing, Inc.*, 136 F. Supp.2d 1096, 1103 n.7 (C.D. Cal. 2001) ("Even if the court did not have *in personam* jurisdiction over [third party corporation], it could nonetheless exercise *in rem* jurisdiction over the receivership assets in [third party corporation]'s possession").

### Conclusion and Order

Having found jurisdiction over the persons of Oceanic and Colin Sholes and the subject matter funds, the matter is hereby referred to the magistrate judge for further discovery and any hearing regarding whether Oceanic or Colin Sholes should be held in contempt of court for violating the preliminary injunction.

So ordered.

Virginia M. Kendall, United States District Judge
Northern District of Illinois

Dated: June 19, 2006