# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

*JH*

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05C 2889 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| CLEVERLINK TRADING LIMITED, et. al., | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STIPULATED ORDER FOR PERMANENT INJUNCTION AND FINAL JUDGMENT AS TO DEFENDANTS CLEVERLINK TRADING LIMITED, REAL WORLD MEDIA, LLC, CRAZY PROTOCOL COMMUNICATIONS, INC., BRIAN D. MUIR, JESSE GOLDBERG AND CALEB WOLF WICKMAN

Plaintiff Federal Trade Commission ("Commission" or "FTC") filed a Complaint For Injunctive And Other Equitable Relief (the "Complaint") on May 16, 2005, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7701 *et seq.*, and the FTC's Adult Labeling Rule (the "Adult Labeling Rule"), 16 C.F.R. Part 316.4. The parties, having been represented by counsel and, acting by and through such counsel, have consented to the entry of this Stipulated Order for Permanent Injunction and Final Judgment (the "Order") without a trial or adjudication of any issue of law or fact herein.

**NOW, THEREFORE**, the Commission and Defendants, having requested the Court to enter this Order, and the Court having considered the Order reached among the parties and for other cause appearing, it is **ORDERED, ADJUDGED, AND DECREED** as follows:

## FINDINGS

1.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1337(a), and 15 U.S.C. §§ 53(b) and 57b.

2.      This Court has jurisdiction over the subject matter of this case and the parties hereto.

3.      Venue in the United States District Court for the Northern District of Illinois is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) and (d).

4.      The activities of Defendants are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

5.      The Commission's Complaint states a claim upon which relief may be granted against Defendants under Section 5 of the FTC Act, 15 U.S.C. § 45, CAN-SPAM, 15 U.S.C. § 7701, *et seq.*, and the Adult Labeling Rule, 16 C.F.R. Part 316.4.

6.      Defendants have entered into this Order freely and without coercion.

7.      The undersigned, individually and by and through their counsel, have agreed that the entry of this Order resolves all matters of dispute between them arising from the Complaint in this action, up to the date of entry of this Order.

8.      Defendants do not admit any of the allegations set forth in the Complaint, other than jurisdictional facts, and deny liability for any of the violations alleged in the Complaint. Entry of this Order shall not be considered a finding of any wrongdoing whatsoever.

9.      Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants further waive and release any claims they may

2

have against the Commission, its employees, representatives or agents. The parties each bear their own costs and attorneys' fees.

10.     Defendants agree that this Order does not entitle them to seek or obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), and Defendants further waive any right to attorneys' fees that may arise under said provision of law.

11.     Entry of this Order is in the public interest.

## DEFINITIONS

1.     "**Affirmative consent**" with respect to a commercial email message, means that "the recipient expressly consented to receive the message, either in response to a clear and conspicuous request for such consent or at the recipient's own initiative;" and "if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purposes of initiating commercial electronic mail messages." 15 U.S.C. § 7702(1).

2.     "**Affiliate program**" means any arrangement whereby any person agrees to provide Defendants with, or refers to Defendants, potential or actual customers.

3.     "**Assisting others**" means: (1) performing customer service functions including, but not limited to, receiving and responding to customer complaints, receiving identifying and financial information from consumers, and communicating with consumers; (2) developing, providing, or arranging for the development or provision of marketing materials, including, but not limited to, Web site and commercial electronic message content; (3) providing names of, or

3

arranging for the provision of, names of potential customers; and (4) performing marketing services of any kind; or (5) acting as an officer or director of a business entity.

4.    **"Clear and conspicuous"** or **"clearly and conspicuously** with regard to the display of a notice means that the information shall be presented in writing, in a type size, color, and location sufficient for an ordinary consumer to read and comprehend it, and shall be disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer. If the information is contained in a multi-page document, the disclosure shall appear on the first page.

5.    **"Commercial electronic mail ("commercial email") message"** means any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet web site operated for a commercial purpose). 15 U.S.C. § 7702(2)(A).

6.    **"Defendants"** means Cleverlink Trading Limited; Real World Media, LLC; Crazy Protocol Communications, Inc.; Brian D. Muir; Jesse Goldberg; and Caleb Wolf Wickman, and each of them, by whatever names each may be known.

7.    **"Document"** is synonymous in meaning and equal in scope to the same term as defined in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

4

8. **"Electronic mail ("email") address"** means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an electronic mail message can be sent or delivered. 15 U.S.C. § 7702(5).

9. **"Header information"** means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message. 15 U.S.C. § 7702(8).

10. **"Initiate"** when used with respect to a commercial email message, means to originate or transmit such message or to procure the origination or transmission of such message, but shall not include actions that constitute routine conveyance of such message. . . . [M]ore than one person may be considered to have initiated a message. 15 U.S.C. 7702(9).

11. **"Material"** means likely to affect a person's choice of, or conduct regarding, goods and services.

12. **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

13. **"Procure"** when used with respect to the initiation of a commercial email message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf, 15 U.S.C. § 7702(12); ***provided, however,*** that for the purposes of this Order, Defendants have not procured the initiation of commercial electronic mail

5

messages that violate CAN-SPAM or its implementing regulations: (1) if they have contractually prohibited affiliates from sending commercial electronic mail or, in the case of persons who are not affiliates, have not requested any such persons to send commercial electronic mail; and (2) if they have complied with the requirements set forth in Section V of this Order.

14.    **"Recipient"** when used with respect to a commercial electronic mail message, means an authorized user of the electronic mail address to which the message was sent or delivered. If a recipient of a commercial email message has one or more electronic mail address in addition to the address to which the message was sent or delivered, the recipient shall be treated as a separate recipient with respect to each such address. If an electronic mail address is reassigned to a new user, the new user shall not be treated as a recipient of any commercial electronic mail message sent or delivered to that address before it was reassigned. 15 U.S.C. § 7702(14).

15.    **"Sender"** when used with respect to a commercial electronic mail message, means a person who initiates such a message and whose product, service, or Internet web site is advertised or promoted by the message. 15 U.S.C. § 7702(16).

16.    **"Sexually oriented material"** means any material that depicts sexually explicit conduct as that term is defined in 18 U.S.C. § 2256, unless the depiction constitutes a small and insignificant part of the whole, the remainder of which is not primarily devoted to sexual matters.

17.    **"Valid physical postal address"** means a sender's current street address, a Post Office box a sender has registered with the United States Postal Service, or a private mailbox a sender has registered with a commercial mail receiving agency that is established pursuant to United States Postal Service regulations.

6

**ORDER**

## I. PROHIBITION AGAINST VIOLATING THE CAN-SPAM ACT

**IT IS THEREFORE ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are permanently restrained and enjoined from violating, or assisting others in violating, the provisions contained in Sections 5 and 6 of CAN-SPAM, 15 U.S.C. §§ 7704 and 7705, as currently promulgated or as it may hereafter be amended, including, but not limited to, initiating the transmission of a commercial electronic mail message that:

A.  Contains, or is accompanied by, header information that is materially false or materially misleading in violation of Section 5(a)(1) of CAN-SPAM, 15 U.S.C. § 7704(a)(1);

B.  Contains, or is accompanied by, subject headings that would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message, in violation of Section 5(a)(2) of CAN-SPAM, 15 U.S.C. § 7704(a)(5)(A)(ii);

C.  Fails to include a clear and conspicuous notice of the recipient's opportunity to decline to receive further commercial electronic mail messages from the sender at the recipient's electronic mail address, in violation of Section 5(a)(5)(A)(ii) of CAN-SPAM, 15 U.S.C. § 7704(a)(5)(A)(ii);

D.     Fails to include a functioning return electronic mail address or other
       Internet-based mechanism, clearly and conspicuously displayed, that a recipient
       can use to submit a reply electronic mail message or other form of Internet-based
       communication requesting not to receive future commercial electronic mail
       messages from the sender at the electronic mail address where the message was
       received, and that remains capable of receiving such messages or communications
       for no less than 30 days after the transmission of the original message, in violation
       of Section 5(a)(3) of CAN-SPAM, 15 U.S.C. § 7704(a)(3);

E.     Fails to include the sender's valid physical postal address in violation of Section
       5(a)(5)(A)(iii) of CAN-SPAM, 15 U.S.C. § 7704(a)(5)(A)(iii); and

F.     Fails to provide a clear and conspicuous identification that the message is an
       advertisement or solicitation, in violation of Section 5(a)(5)(A)(i) of CAN-SPAM,
       15 U.S.C. § 7704(a)(5)(A)(i); *provided, however,* that the requirements of this
       Subsection do not apply to commercial email messages transmitted only to
       recipients who have given Defendant(s) prior Affirmative Consent to receipt of
       messages.

## II.     PROHIBITION AGAINST VIOLATING THE ADULT LABELING RULE

        **IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants,
employees and attorneys, and those persons in active concert or participation with them who
receive actual notice of this Order by personal service or otherwise, whether acting directly or
through any trust, corporation, subsidiary, division, or other device, or any of them, are

8

permanently restrained and enjoined from violating the Adult Labeling Rule, 16 C.F.R. Part 316.4, as currently promulgated or as it may hereafter be amended, including, but not limited to, initiating the transmission of a commercial email message that includes sexually oriented material:

A.  That does not contain the phrase "SEXUALLY-EXPLICIT: " as the first nineteen (19) characters at the beginning of the subject line of the message;

B.  That includes sexually oriented materials within the subject line of the message;

C.  That includes sexually oriented materials within the content of the message that is initially viewable by the recipient, when the message is opened by the recipient and absent any further action by the recipient; and

D.  That does not contain only the following information within the content of the message that is initially viewable by the recipient, when the message is opened by the recipient and absent any further action by the recipient:

1.  The phrase "SEXUALLY-EXPLICIT: " in a clear and conspicuous manner; and

2.  Clear and conspicuous notice that the message is an advertisement or solicitation.

**Provided, however,** that the requirements of this Section do not apply to commercial email messages transmitted only to recipients who have given Defendant(s) prior Affirmative Consent to receipt of messages.

III.     MONITORING COMPLIANCE OF AFFILIATES

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are permanently restrained and enjoined from failing to immediately take the following steps to ensure compliance with Sections I and II of this Order within thirty (30) days of the date Defendants sign this Order:

A.     Prior to a person's participation in any and each of Defendants' affiliate programs, Defendants shall require each prospective participant to provide to Defendants their first and last name, physical address, country, telephone number, email address, date of birth, and bank account information (where used to make payment to that person). In the event that the prospective participant is not a natural person, but is a corporation, partnership, proprietorship, limited liability company, or other organization or legal entity, including an association, cooperative, agency, or other group or combination acting as an entity, Defendants shall also require from that prospective participant the first and last name, physical address, country, telephone number and email address for the natural person(s) who owns, manages, or controls that prospective participant;

B.     Prior to a person's acceptance into any and each of Defendants' affiliate programs, Defendants shall:

10

1.      provide each prospective participant in Defendants' affiliate program a copy of this Order or a summary (to be agreed upon by counsel for Defendants and the FTC);

2.      obtain from each prospective participant an express written agreement, which may be electronic, to comply with the applicable provisions of this Order or the summary, the CAN-SPAM Act, and the Adult Labeling Rule, and an acknowledgment of receipt of this Order or the summary;

C.      Defendants shall establish, implement, and maintain an email address or other Internet-based mechanism, that is clearly and conspicuously disclosed on the first page a consumer visits upon entering Defendants' web site and that invites visitors to report commercial email messages that the visitor believes may be in violation of the CAN-SPAM Act, the Adult Labeling Rule, or any provision of this Order by an affiliate;

D.      Defendants shall promptly and fully investigate, in accordance with industry standards, any complaints received by Defendants regarding a commercial email message that promotes Defendants' web site(s), including, but not limited to, reports received pursuant to Section III.C, and complaints received from consumers, Internet Service Providers, the Commission, or other law enforcement agencies, to determine whether such commercial email message violates a contractual provision of the Defendants' affiliate program, the CAN-SPAM Act, the Adult Labeling Rule, or any provision of this Order;

11

E.      Defendants shall request each new subscriber to Defendants' web sites to identify the manner in which they were directed to Defendants' web sites (*i.e.*, email message, banner ad, pop-up window, etc.). If a new subscriber indicates that he or she was referred to Defendants' web sites through a commercial email message, Defendants shall take reasonable steps to ensure that the email message complies with the contractual provision of the Defendants' affiliate program, the CAN-SPAM Act, the Adult Labeling Rule, and this Order;

F.      Defendants shall immediately terminate from all of the Defendants' affiliate programs, and cease payments to, any person who Defendants reasonably conclude has sent a commercial email message promoting Defendants' web sites that violates a contractual provision of Defendants' affiliate program, the CAN-SPAM Act, the Adult Labeling Rule, or any provision of this Order;

G.      On the web page where a person registers to become a member of Defendants' affiliate programs, Defendant shall clearly and conspicuously disclose that a violation of the affiliate program's commercial email policy will result in immediate termination of a person's affiliate account and the forfeiture of all monies earned or owed to that person. Such message will also include a hyperlink to Defendants' commercial email policy if that policy is not included on the same web page; and

H.      Defendants shall require each person who participates in Defendants' affiliate programs to create, maintain, and retain the records and documents necessary to demonstrate each person's full compliance with each provision of this Order;

12

*Provided however*, that this Section does not authorize or require Defendants to take any action that violates federal, state, or local law.

## IV.   EQUITABLE MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A.   Judgment is hereby entered in favor of the FTC and against Defendants, jointly and severally, in the amount of two million, six hundred and thirty five thousand dollars ($2,635,000.00). The judgment shall be suspended except for: (1) $303,000 to be paid to the FTC as described in Section IV.B; (2) $95,000 to be deposited by Defendant Muir into an escrow account to facilitate tax payments, as set forth in Section IV.C; (3) the proceeds arising from the transaction described in Section IV.D; (4) any tax credits or refunds to be paid to the FTC as described in Section IV.E; (5) the assignment and transfer to the Commmission of any legal or equitable rights or claims to proceeds of credit card transactions of customers of Defendant Cleverlink Trading Limited in the possession of the third parties forth in Section IV.F. The suspended portion of the judgment shall be subject to the conditions set forth in Section V of this Order.

B.   Within ten (10) days after entry of this Order, Defendants shall pay $303,000 to the FTC by wire transfer or certified check in accordance with instructions to be provided by counsel for the FTC.

C.   Within ten (10) days after entry of this Order, Defendant Brian D. Muir shall deposit $95,000.00 into an escrow account for the sole purpose of paying tax

13

liabilities pursuant to Muir's prior arrangements with the Internal Revenue Service and with the California Franchise Board. The $95,000 may be reduced by the amount of any payments for tax liability made on or after May 27, 2006. In the event that Muir defaults on any monthly payment prior to the escrow account being exhausted, Muir shall be liable for the full judgment amount as set forth in Section V of this Order. Defendant Muir must pay all costs associated with creating and administering the escrow account. Defendant Muir shall provide to the FTC with proof of any and all payments from the escrow account to the United States Treasury in satisfaction of Defendants' tax obligation pursuant to this subsection within five (5) days of any such payment.

D.      Within ten (10) days of the entry of this Order, Defendant Brian D. Muir shall deposit the net proceeds from the sale of his 2001 Dodge Viper into the escrow account discussed in Section IV.C. In the event that Muir has not sold the car within ten (10) days of the entry of this Order, Muir shall deliver the car to a used car consignment dealer or auctioneer. Any transfer fees, taxes, or other payments mandated from transferor under California law shall be paid from the proceeds of sale at the time the vehicle is sold. The net proceeds from said transaction shall be paid to the escrow account and shall be utilized to make additional payments for tax liabilities.

E.      In the event that Defendant Wickman receives or becomes entitled to receive any refund or partial refund of any amount paid for income taxes for the tax year 2005, Defendant Wickman shall pay the monetary equivalent to the Commission within

14

thirty (30) days. In the event that Defendant Goldberg receives or becomes entitled to receive any refund or partial refund of any amount paid for income taxes for the tax year 2005, Defendant Goldberg shall pay the monetary equivalent to the Commission within thirty (30) days.

F.    Upon entry of this Order, Defendants shall be deemed to have assigned and transferred to the Commission any and all legal or equitable rights, title and interest to proceeds of credit card transactions of customers of Defendant Cleverlink Trading Limited in the possession of the following third parties:

    1.    Approximately $380,000 held by Relief Defendants Oceanic Telecommunications Services, LLC and Colin Sholes. To the extent that such funds are due and owed to Defendant Cleverlink upon entry of this Order by Relief Defendants, Relief Defendants must cause such funds immediately to be transferred to the Commission by wire transfer or certified check pursuant to instructions from counsel for the FTC; and

    2.    Approximately $100,000 held by Bankard Bank or its agents. To the extent that such funds are due and owed to Defendant Cleverlink upon entry of this Order by Bankard Bank or its agents, Bankard Bank or its agents must cause such funds immediately to be transferred to the Commission by wire transfer or certified check pursuant to instructions from counsel for the FTC;

In connection with the Commission's attempts to recover the funds held by the parties listed above, Defendants shall cooperate in good faith with the

15

Commission's reasonable requests for documents and testimony. Specifically, in connection with the Commission's attempts to recover funds held by the parties listed above, upon written notice, Defendants shall: (a) appear at such places and times as the Commission reasonably requests for interviews, conferences, pretrial discovery, and review of documents, and (b) produce such documents and information in a manner as may be reasonably requested by the Commission. If requested in writing by the Commission, Defendants shall make themselves available for trial testimony in any trial, deposition or other proceeding in connection with the Commission's attempts to recover funds held by the parties listed above, without the service of a civil investigative demand or subpoena;

G.   All funds obtained by the Commission pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including, but not limited to, consumer redress and any attendant expenses for the administration of any redress fund. Defendants shall cooperate fully to assist the Commission in identifying consumers who may be entitled to redress pursuant to this Order. If the Commission determines, in its sole discretion, that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendants shall have no right to challenge the

16

Commission's choice of remedies under this Paragraph. Defendants shall have no right to contest the manner of distribution chosen by the Commission. No portion of any payments under the judgment herein shall be deemed a payment of any fine, penalty, punitive assessment, or forfeiture; and

H.     In accordance with 31 U.S.C. § 7701, Defendants are hereby required, unless they have done so already, to furnish to the Commission their respective taxpayer identifying numbers (social security numbers or employer identification numbers), which shall be used for the purpose of collecting and reporting on any delinquent amount arising out of Defendants' relationship with the government.

I.     Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true, without further proof, in the event of any subsequent proceedings or litigation to enforce this Order or to collect amounts due pursuant to this Section or Section V, including, but not limited to, a non-dischargeability complaint in any bankruptcy case.

## V.     RIGHT TO REOPEN WITH SUM CERTAIN

### IT IS FURTHER ORDERED that:

A.     By signing this Order, Defendants reaffirm and attest to the truthfulness, accuracy, and completeness of the financial statements signed by Brian Muir on June 16, 2005 and February 2, 2006 and March 29, 2006, the financial statements signed by Caleb Wickman on June 17, 2005 and February 7, 2006, and the financial statements signed by Jesse Goldberg on June 16, 2005 and February 2, 2006. The

17

Commission's agreement to this Order is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' financial condition, as represented in the above referenced financial statements, which contain material information upon which the Commission relied in negotiating and agreeing to the terms of this Order;

B.   If the Court finds that a Defendant failed to disclose any material asset, materially misrepresented the value of any assets, or made any other material misrepresentation in, or omission from, the financial statements described above, or that a Defendant failed to comply with their obligations to pay the monetary equitable relief set forth in Section IV of this Order, the Court shall enter judgment against such Defendant, and in favor of the Commission, in the amount of two million, six hundred and thirty five thousand dollars ($2,635,000.00), plus interest as calculated pursuant to 28 U.S.C. § 1961, which shall become immediately due and payable, less any amount previously paid. **Provided, however,** that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court. Any proceedings instituted under this Paragraph shall be in addition to and not in lieu of any other proceedings the Commission may initiate to enforce this Order. For the purposes of reopening or enforcing this Paragraph, Defendants waive any right to contest any of the allegations set forth in the Complaint filed in this matter.

18

## VI.   ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, within five (5) business days after receipt of this Order as entered by the Court, each Defendant shall submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## VII.   COMMISSION'S AUTHORITY TO MONITOR COMPLIANCE

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.      Within fifteen (15) days of receipt of written notice from a representative of the Commission, Defendants each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in any Defendant's possession, or direct or indirect control, to inspect the business operation;

B.      The Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36 and 45, subject to Defendants' rights to object thereto pursuant to the Fed. R. Civ. P.; and

2.      posing as consumers and suppliers to Defendants, any of Defendants' employees, or any other entity managed or controlled in whole or in part

19

by any Defendant, without the necessity of identification or prior notice; and

C.     Defendants shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present.

***Provided, however***, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning or 15 U.S.C. § 45(a)(1)).

## VIII.  COMPLIANCE REPORTING BY DEFENDANTS

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A.     For a period of three (3) years from the date of entry of this Order:

1.     Defendants Brian D. Muir, Jesse Goldberg and Caleb Wolf Wickman shall notify the Commission of the following:

a.     any changes in residence, mailing addresses and telephone numbers, within ten (10) days of the date of such change;

b.     any changes in employment status (including self-employment) and any change in the ownership of such individual defendant in any

20

business entity within ten (10) days of such change. Such notice shall include the name and address of each business the Defendant is affiliated with or employed by, creates or forms, or performs services for; a statement of the nature of the business, and a statement of the Defendant's duties and responsibilities in connection with the business or employment; and

c.   any changes in the Defendant's name or use of any aliases or ficticious names; and

B.   Defendants shall notify the Commission of any changes in the corporate structure of Cleverlink Trading Limited, Real World Media LLC, Crazy Protocol Communications, Inc., or any business entity that Defendants directly or indirectly control, or have an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change in the corporation about which Defendants learn less than thirty (30) days prior to the date such action is to take place, Defendants shall notify the Commission as soon as is practicable after obtaining such knowledge.

21

C.  One hundred eighty (180) days after the date of entry of this Order, Defendants Cleverlink Trading Limited, Real World Media LLC, Crazy Protocol Communications, Inc., Brian D. Muir, Jesse Goldberg, and Caleb Wolf Wickman shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

1.  For Defendants Brian D. Muir, Jesse Goldberg, and Caleb Wolf Wickman:

    a.  The then-current residence address, mailing address, and telephone numbers of such Individual Defendant;

    b.  The then-current employment and business addresses of such Individual Defendant, a description of the business activities of each such employer or business, and the title and responsibilities, for each such employer or business; and

    c.  any other changes required to be reported under subparagraph A of this Section.

2.  For all Defendants:

    a.  A copy of each acknowledgment of receipt of this Order, obtained pursuant to Sections III and X of this Order;

    b.  Any changes required to be reported pursuant to subparagraph A of this Section;

    c.  Upon request by the FTC, a list that identifies, to the best of the Defendants' knowledge and belief, after due inquiry, every person

22

who is initiating, marketing, or promoting, through commercial

email messages, any goods, services, or web sites of Defendants

since entry of this Order.

    d.    A list of all names under which Defendants did or currently do

business under since entry of this Order; and

    e.    A list of all domain names Defendants have registered or used

since entry of this Order.

C.    For purposes of this Order, Defendants shall, unless otherwise directed by the

Commission's authorized representatives, mail all written notifications to the

Commission to:

    Associate Director, Division of Enforcement
    Federal Trade Commission
    601 New Jersey Avenue, N.W.
    Washington, DC 20580
    Re:   *FTC v. Cleverlink Trading Limited*, et. al.
        Civ. No. 05C 2889 (N.D., Ill)

D.    For the purposes of the compliance reporting required by this Section,

representatives of the Commission are authorized to communicate directly with

Defendants, unless Defendants indicate that they are represented by counsel and

provide the name and address of such counsel to the Commission.

## IX.  RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of six (6) years from the date of entry of

this Order, Defendants, in connection with any business involved in the marketing, advertising,

23

promotion, offering for sale, or sale of goods or services via commercial email messages or other Internet-based mechanisms, and their agents, employees, officers, corporations, successors, and assigns, and those in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.    Accounting records that reflect revenue generated by sales to individuals referred through Defendants' affiliate program and corresponding disbursements to participants in Defendants' affiliate program on an individual basis;

C.    Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

D.    Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

E.    Complaints and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

24

F.     Copies of all information obtained, pursuant to Paragraph III, from each person
       who participates in Defendants' affiliate programs; and

G.     All other records and documents necessary to demonstrate full compliance with
       each provision of this Order, including but not limited to, all documents obtained,
       created, generated or which in any way relate to the requirements, provisions, or
       terms of this Order, copies of signed and dated acknowledgments of receipt of this
       Order, required by Paragraphs VI and X of this Order, and all reports submitted to
       the Commission pursuant to this Order.

## X.     DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the date of entry
of this Order, Defendants shall deliver copies of this Order as directed below:

A.     **Corporate Defendants**: Defendants Cleverlink Trading Limited, Real World
       Media, LLC and Crazy Protocol Communications, Inc. must deliver a copy of this
       Order to all of its principals, officers, directors and managers. Those defendants
       also must deliver copies of this Order to all of its employees, agents, and
       representatives who engage in conduct related to the subject matter of the Order.
       For current personnel, delivery shall be within five (5) days of service of this
       Order upon Defendants. For new personnel, delivery shall occur prior to them
       assuming their responsibilities.

B.     **Individual Defendant as Control Person:** For any business that Defendants
       Brian D. Muir, Jesse Goldberg or Caleb Wolf Wickman control, directly or

25

indirectly, or in which he has majority ownership interest in, the Defendant must deliver a copy of this Order to all principals, officers, directors, and managers of that business if such business utilizes commercial e-mail or another Internet-based mechanism to market its goods or services. Defendants Brian D. Muir, Jesse Goldberg or Caleb Wolf Wickman must also deliver copies of this Order to all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within five (5) days of service of this Order upon the Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities.

C. **Individual Defendant as employee or non-control person:** For any business where Defendants Brian D. Muir, Jesse Goldberg or Caleb Wolf Wickman are not a controlling person of a business but otherwise engage in conduct related to the subject matter of this Order, the Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

D Defendants must secure a signed and dated statement acknowledging receipt of this Order, within thirty (30) days of delivery, from all persons receiving a copy of this Order pursuant to this Section.

## XI. TRANSFER OF CUSTOMER LISTS

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, electronic mail address, or other identifying

information of any person who submitted such information to Defendants as a result of, derived from, or otherwise related to the activities alleged to be in violation of the FTC Act, the CAN-SPAM Act or the Adult Labeling Rules in the Commission's Complaint; *provided, however*, that Defendants may disclose such information: to any contractor or vendor for the purposes of billing Defendants' own charges; to a law enforcement agency; to the Commission; or, as required by any law, regulation, or court order.

## XII.   LIFTING OF THE ASSET PRESERVATION ORDER

**IT IS FURTHER ORDERED** that the preservation of Defendants' assets pursuant to Section VIII of the Preliminary Injunction entered by this Court on June 29, 2005, shall be lifted to the extent necessary to transfer assets for equitable monetary relief as required by Section IV of this Order, and upon completion of that transfer, shall be lifted permanently.

## XIII.   SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another. If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XIV.   FEES AND COSTS

**IT IS FURTHER ORDERED** that each party to this Order hereby agrees to bear its own costs and attorneys' fees incurred in connection with this action.

## XV.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.


**JUDGMENT IS THEREFORE ENTERED**, pursuant to all the terms and conditions

recited above.

**STIPULATED AND AGREED TO BY:**

FOR THE PLAINTIFF:

_____  · 7/10/06
                            Dated

Steven M. Wernikoff
Jason K. Bowler
Federal Trade Commission
55 East Monroe Street, Suite 1860
Chicago, Illinois 60603
(312) 960-5634 [Telephone]
(312) 960-5600 [Facsimile]

Attorneys For Plaintiff
FEDERAL TRADE COMMISSION

FOR THE DEFENDANTS:

_____  5/09/06
                            Dated

Brian D. Muir

_____  5/9/06
                            Dated

Jesse Goldberg

_____  05/09/06
                            Dated

Caleb Wolf Wickman

_____  05/09/06
                            Dated
_____ on behalf of
Cleverlink Trading Limited

_____  5/9/06
                            Dated
_____ on behalf of
Real World Media, LLC

28

_____  5/09/06
Dated

Brian D. Muir on behalf of
Crazy Protocol Communications, Inc.


_____  5/11/06
Dated

Joel R. Dichter
Klein, Zelman, Rothermel & Dichter, LLP
485 Madison Avenue
New York, NY 10022-5803
(212) 935-6020 [Telephone]
(212) 753-8101 [Facsimile]

Theodore F. Kommers
Shannon Leiola Clark
Gould & Ratner
222 North LaSalle Street, Suite 800
Chicago, IL 60601
(312) 236-3003 [Telephone]

Attorneys for Defendants


**IT IS SO ORDERED**, this _25_ day of _July_, 2006

_____

Honorable Virginia M. Kendall
United States District Judge

29