**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05 C 2889 |
| ) | |
| CLEVERLINK TRADING LIMITED, *et al.* ) | Judge Virginia M. Kendall |
| ) | |
| Defendants, ) | |
| ) | |
| OCEANIC TELECOMMUNICATIONS ) | |
| SERVICES, LLC and COLIN H. SHOLES, ) | |
| ) | |
| Relief Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF RELIEF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT VI**

Relief Defendants OCEANIC TELECOMMUNICATIONS SERVICES, LLC ("Oceanic") and COLIN H. SHOLES ("Sholes") (collectively "Relief Defendants"), by their attorney, LORI E. IWAN, submit this "Memorandum of Law in Support of their Motion for Summary Judgment as to Count VI." The Relief Defendants are entitled to summary judgment as a matter of law because: (i) there is no evidence that the Relief Defendants had knowledge that defendant Cleverlink was submitting credit card charges through Oceanic that were obtained by violating the CAN-SPAM or the Adult Labeling Rule; (ii) there is no evidence that the Relief Defendants committed a violation of the CAN-SPAM or the Adult Labeling Rule, and (iii) the Relief Defendants only provided credit card services to Cleverlink which makes them immune from liability pursuant to the provisions of the CAN-SPAM Act and the Adult Labeling Rule.

The FTC has not, and cannot, identify any admissible evidence that any of the money

received by Oceanic constituted ill-gotten gains or that Oceanic or Sholes violated CAN-SPAM or the Adult Labeling Rule for purposes of presenting a prima facie case on Count VI of the Second Amended Complaint, and even if the FTC could identify any evidence, the Relief Defendants are immune from liability. Accordingly, the FTC is not entitled to disgorge any of the funds in Oceanic or Sholes's possession and, therefore, summary judgment should be entered in the Relief Defendants' favor and against the FTC on Count VI.

## Factual Background

### The FTC v. Cleverlink Litigation

The FTC filed the underlying action in this litigation on May 16, 2005 against Cleverlink Trading Limited ("Cleverlink") and other defendants for alleged violations of the CAN-SPAM Act (15 U.S.C. § 7701 *et seq.,* and the Adult Labeling Rule (15 U.S.C. § 7704(d)(3) and 7711(a). (Statement of Facts "SOF", ¶¶6.) On June 29, 2005, the FTC and Cleverlink agreed to a Preliminary Injunction that prohibited the transmission of commercial e-mails containing misrepresentations. (SOF ¶7) On July 12, 2006, FTC and Cleverlink agreed to the terms of a Stipulated Order for Permanent Injunction and Final Judgment. (SOF ¶13) The Stipulated Order between the FTC and Cleverlink did not contain any admissions or findings of liability against Cleverlink, and did not contain any offers of proof or accountings of any sum of money that had been traced from commercial e-mails sent in violation of CAN-SPAM or the Adult Labeling Rule and resulted in a credit card transaction processed by Oceanic with resulting monies deposited into Oceanic's bank accounts. Instead, the Court held and the FTC agreed that the Stipulated Order between FTC and Cleverlink was not an adjudication of the Relief Defendants rights. (SOF ¶15)

### The FTC v. Oceanic and Sholes

The FTC – Cleverlink Preliminary Injunction was served on the Relief Defendants Oceanic and Sholes on June 30, 2005. (SOF ¶9) The Preliminary Injunction provided that "Oceanic…hold and retain…any account or asset…of any Defendant, including Cleverlink…" (SOF ¶7; R. 84 at 2.)

On January 12, 2006, FTC filed a second amended complaint naming Oceanic and Sholes as "Relief Defendants" and alleging for the first time that Oceanic and Sholes' possession of funds through its processing of credit card transactions for Cleverlink constituted the receipt of "ill-gotten gains" and that the Relief Defendants should be disgorged of the monies held in the Oceanic accounts. (SOF ¶ 12) The Relief Defendants denied all material allegations in the second amended complaint. (SOF ¶ 12) Additionally, the Relief Defendants pled affirmative defenses, including the immunity provisions of CAN-SPAM and the Adult Labeling Rule, and that a Judgment had adjudicated the Relief Defendants' rights to the monies held in the Oceanic bank accounts. (SOF ¶¶ 12, 32, 33) The FTC did not answer or deny the affirmative defenses. There is no evidence that Oceanic or Sholes had actual knowledge that Cleverlink allegedly violated the CAN-SPAM Act or the Adult Labeling Rule for any credit card charge processed by Oceanic pursuant to the contract with Cleverlink. (SOF ¶ 34, 35) The credit card processing services were provided by Oceanic to Cleverlink during a six week period in March and April 2005. (SOF ¶ 36)

**Oceanic and Sholes**

Oceanic was created by Colin Sholes on March 7, 2005; Sholes has always been the sole owner of Oceanic. (SOF ¶¶ 18, 19) The business purpose was to provide credit card services to customers. (SOF ¶ 18) Cleverlink contacted Oceanic for the purpose of processing Cleverlink's credit card transactions in March 2005. (SOF ¶2 3) A written contract was agreed to between

3

Cleverlink and Oceanic. (SOF ¶¶ 26, 27) The contract expressly provided that Cleverlink will not use any of Oceanic's services in furtherance of any activity which constitutes a violation of any law or regulation or which may cause Oceanic to be subject to investigation, prosecution or legal action. (SOF ¶¶ 26, 27, 28)

Oceanic processed credit card transactions for Cleverlink for approximately six weeks then terminated the account on April 20, 2005 based on information that Cleverlink had breached the contract. (SOF ¶¶ 29, 30) Pursuant to the terms of the contract, Cleverlink forfeited all assets in the event of termination of the contract based on a violation or breach of the contract. (SOF ¶¶ 27, 28) At no time has Cleverlink disputed or objected to the appropriateness of Oceanic's actions in terminating the contract, assessing fees and fines or declaring all assets forfeited as of the date of contract termination. (SOF ¶ 31) A judgment order was entered in favor of Oceanic and against Cleverlink on June 30, 2006 in the amount of $370,000 based on Cleverlink's breach of contract. (SOF ¶¶ 32, 33) Neither Oceanic nor Sholes had any ownership interest in Cleverlink at any time. (SOF ¶ 24)

**Argument**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. RULE CIV. P. 56(c); *See also,* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Patel v. Allstate Insurance Co., 105 F.3d 365, 370 (7th Cir. 1997). In determining whether to grant a motion for summary judgment, the facts are viewed in the light most favorable to the non-moving party. Weisbrot v. Medical College, 79 F.3d 677, 680 (7th Cir. 1996). The non-moving party may not rest upon mere denials or allegations in the pleadings, but

4

must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Significantly, summary judgment must be granted when a party cannot support each essential element of its claim because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**Argument**

I. **The FTC Has Not And Cannot Put Forth Any Evidence That Any Of The Money Received By Oceanic Constituted Ill-Gotten Gains, Therefore It Cannot Prove An Essential Element Of The Claim For Disgorgement.**

The FTC cannot support the *prima facie* element of its claim that the money in the Relief Defendants' possession was ill-gotten because of a complete failure of proof that any credit card transaction serviced by Oceanic arose from a commercial e-mail that violated CAN-SPAM or the Adult Labeling Rule. The FTC dismissed the underlying action against Cleverlink without any admission or finding of liability against Cleverlink. (SOF ¶13) No evidence has been identified that Oceanic was anything other than a service provider to Cleverlink. The undisputed evidence establishes that Oceanic only provided a service to Cleverlink, and only after the credit card transactions had been processed by three other entities before reaching Oceanic. (SOF ¶¶ 20, 21, 22) The FTC has the burden to set forth specific facts sufficient to raise a genuine issue for trial. See Celotex at 324. FTC has failed to support the allegations in Count VI with any admissible evidence. Therefore, the FTC cannot prove the essential elements of its claim that Oceanic and/or Sholes possessed "ill-gotten" gains, and, therefore, the FTC cannot obtain disgorgement of the money that Oceanic collected for Cleverlink credit card transactions as a matter of law.

II. **The FTC's Request for Disgorgement is Barred by the Immunity Provisions of the CAN-SPAM Act.**

The FTC has no admissible evidence, by way of testimony or documentation, that Oceanic or Sholes had any **knowledge** of Cleverlink's alleged violations of 15 U.S.C. § 7701 *et*

5

*seq.* the CAN-SPAM Act (the "Act"), or 15 U.S.C. § 7704(d)(3) and 7711(a) the Adult Labeling Rule ("Rule"), or that the Relief Defendants violated the Act or Rule by **sending** commercial e-mails for the benefit of Cleverlink that resulted in a credit card transaction being processed by Oceanic. The undisputed evidence is that the Relief Defendants were nothing more than a service provider to Cleverlink. The Act and Rule provide immunity from prosecution for third party service providers. The FTC cannot support an essential element of its claim for disgorgement pursuant to the Act or Rule. Celotex Corp., at 324.

### A. Relief Defendants Were A Service Provider and Therefore Immune From Prosecution Under the CAN-SPAM Act.

The FTC cannot seek disgorgement of Relief Defendants' monies because Oceanic and Sholes cannot be held liable for violations of the CAN-SPAM Act. 15 U.S.C. § 7705 provides a limited enforcement against third parties: "A person that provides goods, products, property or services to another person that violates [the Act] *shall not be held liable for such violation.*" *See* 15 U.S.C. § 7705(b)(1) (2004) (emphasis added). The evidence is undisputed that Relief Defendants only provided services to Cleverlink. (SOF ¶¶18, 23, 24, 25, 26, 27, 28, 31). Under the terms of their Contract, Oceanic provided Cleverlink with payment processing services. (Id.) Sholes' liability is entirely derivative of Oceanic inasmuch as Sholes was the sole owner of Oceanic. Oceanic's business service for Cleverlink falls squarely within the immunity provisions of the Act providing that a third-party that provided a service to an entity that allegedly violated the Act is itself immune from liability. Accordingly, Oceanic and Sholes are immune from liability pursuant to the CAN-SPAM Act.

Additionally, the immunity described in Section 7705(b) of CAN-SPAM extends to Section 7704(d), the Adult Labeling Rule. Section 7705(b) provides for limited enforcement against third parties that violate Section 7704(a), the general prohibition against the electronic

6

transmission of misleading information. As the Adult Labeling Rule is aimed at preventing misleading communications that are sexual in nature, a third party cannot be held liable for providing "goods, products, property or services" to an entity that violates the Rule. *See* 15 U.S.C. § 7705(b)(1). Therefore, since the Relief Defendants only provided Cleverlink with payment processing services, the FTC's unproven allegations that Cleverlink violated § 7704(d) cannot also be imputed to Oceanic and Sholes. Accordingly, the Relief Defendants are immune from prosecution for alleged violations of the Adult Labeling Rule based on the undisputed evidence.

**B. Relief Defendants Are Immune From Prosecution Under the CAN-SPAM Act Because They Had Neither an Economic Interest In Cleverlink Nor Any Knowledge that Cleverlink Violated the Act.**

Additionally, Relief Defendants do not fit into any of the exceptions for enforcement of the Act against third parties, as they **neither had any economic interest in Cleverlink, nor had any knowledge of its alleged violations of the Act.** *See* 15 U.S.C. § 7705 (b)(2) (A third party may be held liable for violations of the CAN-SPAM Act if (1) it has a greater than 50 percent ownership in the business or (2) has knowledge that the business has violated the Act).

As to the first exception, Cleverlink was owned by Brian D. Muir, Jesse Goldberg and Caleb Wolf Wickman, and not by either one of the Relief Defendants. (SOF ¶¶ 6, 24). As to the second exception, the evidence is uncontested that the Relief Defendants had no knowledge of Cleverlink's alleged violation of the Act or Rule. Instead, Oceanic specifically barred any such activity in the binding written contract between Cleverlink and Oceanic. (SOF ¶¶ 26, 27, 28). In the "Representations and Warranties of Client" section of the contract, Cleverlink expressly warranted that it would maintain its business in accordance with the law. (SOF ¶ 28). The contract provides:

> With full understanding that [Oceanic] is expressly and directly relying on the following representations and warranties in agreeing to enter into this Agreement and to provide services hereunder, [Cleverlink] hereby makes the following representations and warranties to [Oceanic]:
>
> (a) Strict Compliance with Laws, Rules and Regulations. [Cleverlink] does, and at all times during the term of this Agreement will, operate its business and the [Cleverlink] Website in strict compliance: (i) with all laws and regulations applicable to [Cleverlink's] business…
>
> (i) Use of [Oceanic's] Services. [Cleverlink] will not during the term of this Agreement use any of [Oceanic's] services in any manner, or in furtherance of any activity, which constitutes a violation of any law or regulation **or which may cause [Oceanic] to be subject to investigation, prosecution or legal action.**

Id. (Emphasis added). As the language of their Agreement indicates, Oceanic and Sholes were told and reasonably believed that Cleverlink would operate its business in accordance with all applicable laws. Clearly this warranty extended to Cleverlink's compliance with the CAN-SPAM Act and the Adult Labeling Rule, as Cleverlink's business involved sending e-mail messages to customers. Oceanic and Sholes received assurances that their business arrangement with Cleverlink would not expose them to liability for any actions by Cleverlink. As soon as Oceanic learned that Cleverlink has questionable credit card transactions, the contract was terminated. (SOF ¶ 29) At no time during the six week business relationship while Oceanic was processing Cleverlink's credit card transactions was Oceanic or Sholes informed that Cleverlink was improperly sending commercial e-mails in violation of the law.

The FTC dismissed the underlying action against Cleverlink without any admission or finding of liability against Cleverlink. (SOF ¶13) No evidence has been identified that Oceanic was anything other than a service provider to Cleverlink. The undisputed evidence establishes that Oceanic only provided a service to Cleverlink and only after the credit card transactions had been processed by three other entities before reaching Oceanic. (SOF ¶¶ 20, 21, 22)

For the foregoing reasons, Oceanic and Sholes are immune from prosecution by the FTC for Cleverlink's alleged violations of the Act or Rule. This immunity extends to Count VI, the FTC's claim for disgorgement, because the disgorgement remedy, if imposed on the Relief Defendants, would contravene the immunity provisions of the Act and Rule.

**Conclusion**

WHEREFORE, Relief Defendants OCEANIC TELECOMMUNICATIONS SERVICES, LLC and COLIN H. SHOLES move for an order granting summary judgment in their favor and against Plaintiff, FEDERAL TRADE COMMISSION, as to Count VI, there being no genuine issue of material fact, and the Relief Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

/s/ Lori E. Iwan
_____
Lori E. Iwan


Lori E. Iwan
Iwan Cray Huber Horstman
& VanAusdal LLC
303 W. Madison Suite 2200
Chicago, IL 60606
Phone: 312.332.8450
Facsimile: 312.332.8451
Email: lei@iwancray.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2006, I caused to be served a true copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF RELIEF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT VI,** via electronic service:

>Steven M. Wernikoff
>Jason K. Bowler
>Federal Trade Commission
>55 East Monroe Street, Suite 1860
>Chicago, Illinois 60603
>Counsel for FTC

>/s/ Lori E. Iwan
>_____
>Lori E. Iwan